Richard J. CAREY, Plaintiff,

v.

STATE FARM MUTUAL INSURANCE COMPANY, Defendant.

Civ. No. 933.

United States District Court
E. D. Virginia,
Newport News Division.

Nov. 19, 1965.

Montgomery Knight, Jr., Doumar, Pincus, Anderson & Knight, Norfolk, Va., for plaintiff.

Lewis H. Hall, Jr., Hall & Fox, Newport News, Va., for defendant.

WALTER E. HOFFMAN, Chief Judge.

At issue in this declaratory judgment action is the question of coverage afforded by two policies of insurance issued by the defendant.

On September 1, 1961, Cecil R. Foster, the son of Virgil R. Foster of Mathews, Virginia, was driving a 1961 Chevrolet in the City of Hampton, Virginia, when an accident occurred. As a result of this accident the plaintiff, Richard J. Carey, obtained a judgment against Cecil R. Foster in the sum of $45,000.00. The defendant had issued its standard liability insurance policy, with limits of $15,000.00 as to any one person and $30,000.00 as to any one accident, naming Virgil R. Foster and Cecil R. Foster as the named insureds, and designating the 1961 Chevrolet as the vehicle involved in that policy. After the judgment was obtained the defendant paid $15,000.00 on account of same—this representing defendant's maximum liability under the policy just described. For convenience this policy will hereafter be denominated as the "Chevrolet policy." This policy was issued covering the period of June 27, 1961, to September 13, 1961, and was in full force and effect at the time of the accident. From the evidence it appears that the certificate of title to the 1961 Chevrolet was not actually issued until July 20, 1961, but admittedly more than 30 days had elapsed from the time of the acquisition of the 1961 Chevrolet

until the date of the accident—the date of actual acquisition having been on June 24, 1961.

On December 20, 1960, a 1956 Hudson automobile was purchased by Virgil R. Foster and titled in his name. As to the Hudson, defendant issued its standard family automobile policy to Virgil R. Foster. The face of the policy reveals Cecil as a probable driver of the vehicle. The policy in evidence reflects that it was effective from March 13, 1961, to August 25, 1961, but, by stipulation, it is admitted that this policy was renewed and was in full force and effect on September 1, 1961, the date of the accident. The Hudson automobile was not involved in the accident; it was the 1961 Chevrolet which was being driven by Cecil R. Foster at the time and place of the accident. The standard family automobile policy in which the Hudson was the named vehicle had limits of liability to the extent of $25,000.00 as to each person and $50,000.00 as to each occurrence. For convenient reference the family automobile policy will hereafter be designated as the "family policy."

It is admitted that $30,000.00 remains unpaid on plaintiff's judgment against Cecil R. Foster.

### The Chevrolet Policy

Under paragraph 24 entitled "Declarations" it is provided:

"By acceptance of this policy the named insured agrees that the statements in the declarations are his agreements and representations, and that this policy is issued in reliance upon the truth of such representations and that this policy embodies all agreements existing between himself and the company or any of its agents relating to this insurance."

Under paragraph 17 of the conditions with respect to "Other Insurance—Coverages A, B, D, E, F, G and H" it is said:

"If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss. * * *"

We should note that the words "other insurance" do not refer to a policy issued by a different company but may include "other insurance" issued by the defendant.

### The Family Policy

The family policy issued by defendant on the 1956 Hudson contains, among other provisions, the following:

"Part I—LIABILITY:

*Persons Insured.* The following are insureds under Part I:

(a) With respect to the owned automobile,

(1) The named insured and any resident of the same household,

(2) Any other person using such automobile, provided the actual use thereof is with the permission of the named insured."

By endorsement 6501.1 entitled "Amendment of Definition of Owned Automobile" we find the original policy accordingly amended as follows:

"It is agreed:
That the definition of 'owned automobile' is amended to read:
'Owned automobile' means

(a) a private passenger, farm or utility automobile described in the policy.

(b) a trailer owned by the named insured, provided with respect to Part III it is described in the policy.

(c) *a private passenger,* farm or utility *automobile ownership of any of which is acquired by the named insured during the policy period, provided*

(1) It replaces a described automobile,

*or*

(2) *The company insures all private passenger automobiles, farm*

*automobiles, and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company within 30 days following such date.* * * * Nothing herein contained shall be held to alter, vary, waive or extend any of the terms, conditions, agreements or limitations of the undermentioned policy other than as hereinabove stated."

The family policy contained a substantially identical provision under paragraph 16 of the Conditions referring to "Declarations" as is set forth under paragraph 24 of the Chevrolet policy. As to "Other Insurance" it is defined and set forth in the family policy as follows:

*"Other Insurance.* If the insured has other insurance against a loss covered by Part I of this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; provided, however, the insurance with respect to a temporary substitute automobile or non-owned automobile shall be excess insurance over any other valid and collectible insurance."

### Other Facts

While the evidence tends to support plaintiff's contention that Cecil R. Foster could appropriately be considered a resident of the same household, i. e., the household of Virgil R. Foster, we think it unnecessary to make this express finding. There can be no doubt as to other pertinent facts, to-wit:

(1) Cecil R. Foster was driving the 1961 Chevrolet on September 1, 1961, with the permission of Virgil R. Foster;

(2) The Hudson and Chevrolet were both private passenger automobiles;

(3) No farm automobiles or utility automobiles were owned by Virgil R. Foster or Cecil R. Foster on any pertinent date;

(4) The defendant insurance company insured *all* private passenger automobiles owned by the named insured;

(5) No other insurance company issued any policy as to the Chevrolet or Hudson;

(6) The named insured, Virgil R. Foster, notified the defendant company as to the acquisition of the 1961 Chevrolet titled in the name of Cecil Ripley Foster and Vergil Ray Foster within 30 days following the date of acquisition; and

(7) Endorsement 6501.1 was issued pursuant to an order of the State Corporation Commission of Virginia, in accordance with Virginia law. Administrative Order No. 6681, entered March 26, 1963 (after the accident) withdrew the use of this endorsement.

### Contentions

From these facts plaintiff argues that the 1961 Chevrolet became an "owned automobile" within the meaning of the family policy; that since such "owned automobile" was being used with the permission of the named insured, Virgil R. Foster, coverage to Cecil R. Foster was afforded, subject to the "other insurance" or "pro rata" provisions of the two policies.

Defendant urges that the "owned automobile" endorsement is merely an automatic insurance clause, the purpose of which is to provide the insured coverage for 30 days if needed, assuming that all vehicles are insured by the same company and proper notice is given. Moreover, since no premium adjustment was made on the family policy, defendant submits that this indicates the clear intention of non-coverage under the family policy for any accident involving an automobile insured under a separate policy by the defendant.

For reasons hereinafter stated, we agree with the plaintiff.

### Discussion

That the parties are bound by the terms of the contracts must be conceded under Virginia law. Authorities are legion to the effect that insurance

companies are entitled to rely upon the express terms of the contract in denying coverage. For once, however, the plain and unambiguous language of the contracts in question seals the fate of the insurance company.

While the intention of the insurer is not revealed by the evidence,[1] the Court is willing to assume that it was not the intent of the defendant insurance company to afford coverage to the 1961 Chevrolet as to the facts herein presented. In making this assumption we place no significance on the fact that no premium adjustment was made on the family policy. The premium may have been included as a part of the original premium in the issuance of the family policy. We know nothing as to the intention of Virgil R. Foster, the named insured under the family policy. In all probability he had no knowledge of coverage afforded and certainly did not contemplate the factual situation presented. Even the excluded evidence of the Deputy Commissioner of Insurance supports the plaintiff's argument that coverage attached to the 1961 Chevrolet under the family policy, if the defendant company insured *all* automobiles and notice was given within 30 days from the date of the acquisition of the Chevrolet. It is only with the conclusory opinion of the witness that plaintiff disagrees.

Several Virginia cases have been cited as authority by counsel for the respective parties but we find them inapposite. Conceding that Virginia law is controlling, the question has not yet been resolved in this state. However, an independent research discloses a case substantially identical.[2] The Eighth Circuit in Imperial Casualty & Indemnity Co. v. Relder, 308 F.2d 761, was called upon to determine the coverage afforded by a family policy issued by Imperial on a 1956 Oldsmobile. When the family policy was issued, Relder owned only the 1956 Oldsmobile. Two months later Relder purchased a 1959 Oldsmobile as an additional automobile but made no report of this acquisition to Imperial. Instead, Relder applied for insurance to Home Indemnity Company, the policy was issued and made effective from October 21, 1959, to April 21, 1960, and was subsequently renewed from April 21, 1960, to October 21, 1960. The Home Indemnity policy was issued to Morris Relder and Gertrude Relder, his wife. On June 19, 1960, within the policy period, Relder was riding as a passenger in the 1959 Oldsmobile then being driven by a Miss Kleiner, apparently with Relder's permission. After the accident, but still within the policy period of the family policy, Imperial was notified of the acquisition of the 1959 Oldsmobile and also advised of the accident. Imperial filed a declaratory judgment action to determine whether the family policy covered the after-acquired 1959 automobile which was in the accident of June 19, 1960.

Without reviewing the opinion of the trial court, which was approved by the Eighth Circuit, it is sufficient to state that the contentions of Relder and Home Indemnity Company were upheld. In considering the intention of the parties the Court, citing from Continental Casualty Co. v. Wagner, 8 Cir., 1952, 195 F.2d 936, 938, 31 A.L.R.2d 1216, said:

> " * * * [A]nd where the meaning of a contract of insurance can be fully and clearly ascertained from its language, courts may not resort to surrounding circumstances or the conduct of the parties in aid of its interpretation."

---

1. Evidence was submitted by defendant in the form of testimony from Courtenay Walner Harris, Deputy Commissioner of Insurance for the State Corporation Commission of Virginia. Testimony was rejected as to the purpose of endorsement 6501.1 and subsequently it developed that the witness could only give *his own opinion* of the purpose of the endorsement.

2. Imperial Casualty & Indemnity Co. v. Relder—the case found on independent research—is cited with approval by the Supreme Court of Appeals of Virginia in Celina Mutual Insurance Company v. Cohen, 204 Va. 763, 133 S.E.2d 311, 314. The Imperial case is likewise cited with approval in several other state courts.

And further held:

"In construing appellant's contract of insurance, we must give to its terms their plain and ordinary meaning where that appears clear. Courts have no license to search out and find ambiguity where none exists and thus afford opportunity to bend out of proportion the clearly expressed agreement of the parties. Of course, if there exists ambiguity in the language of the policy contract, the courts are not so bound. Under such circumstances, the construction determined upon must be most strongly against the insurer as the writer of the contract. Hawkeye Casualty Co. v. Rose, 8 Cir., 1950, 181 F.2d 157, 159. Expressed another way, if the ambiguity, when so determined, be susceptible of two interpretations, then the interpretation which affords coverage to the insured must be accepted. Allstate Insurance Co. v. Hartford Accident & Indemnity Co., Mo.App.1958, 311 S.W.2d 41, 47."

With the Eighth Circuit, we think that no ambiguity exists as to the family policy issued by this defendant. It is clear that the policy was written to afford automatic coverage for after-acquired automobiles.[3] This is not a situation in which other automobiles were owned by the insured at the time of the issuance of the family policy and the ownership was not declared or disclosed.[4] That the family policy contemplated the possible inclusion and ownership of more than one vehicle is revealed under Condition 2 by the sentence, "The named insured shall, upon request, furnish reasonable proof of the number of such au-

tomobiles * * * and a description thereof" and likewise by the preceding sentence of Condition 2 where it is said, "If the named insured acquires ownership of an additional private passenger * * * automobile, he shall inform the company within thirty days following the date of its delivery. Any premium adjustment necessary shall be made as of the date of such change or acquisition in accordance with the manuals in use by the company."

As in Imperial, no adjustment of premium has been made by defendant on the family policy issued to Virgil R. Foster. This adjustment can still be made and constitutes an additional premium due by Virgil R. Foster. No demand for any additional premium has as yet been made. What was said in Imperial readily disposes of this point:

"It may well be that the insured was unaware of the fact that he had purchased additional or 'other insurance' as it is referred to in appellant's policy. That does not obviate the fact that the policy that he had purchased and paid for on August 12, 1959, extended coverage to after-acquired automobiles and that no notice thereof to the company needed to be given excepting only within the policy period and that he was liable for the additional premium thereon dated from the time of the acquisition of the additional automobile."

The only distinctions between the situation here presented and that before the Eighth Circuit in Imperial are—

(1) In Imperial the notice of acquisition was required to be given within the policy period, whereas, in the case under

---

3. Subject to the proviso that notice is given within 30 days from the date of acquestion of the after-acquired vehicle (a fact not disputed in this case) and that the defendant insured all vehicles of the named insured (a fact clearly proven).

4. The evidence discloses that Vergil R. Foster owned a 1955 Plymouth which was insured by defendant under a separate policy. He disposed of this vehicle and acquired the Chevrolet, apparently on June 24, 1961, but the certificate of title was not issued for the Chevrolet until July 20, 1961, and then in the name of Cecil Ripley Foster and Vergil Ray Foster. Nevertheless, application for title was made in compliance with § 46.1-41 of the Code of Virginia. The Plymouth was not acquired until after the Hudson was acquired.

consideration, the notice had to be given within 30 days after acquisition of the after-acquired vehicle. That the required 30 day notice was given is plain by the fact that the defendant wrote its separate policy on the Chevrolet within that same period of time.

(2) In Imperial the "other insurance" was written by a different company. Here the same company wrote both policies and insured all the vehicles owned by the named insured. We find nothing in the policy indicating that the term "other insurance" has reference to a policy issued by a different company.

We are completely unpersuaded by defendant's argument that the automatic coverage under the family policy is limited, as to an after-acquired automobile, to 30 days. The plain language of the contract refutes this contention without the necessity of further comment. The defendant is the architect of its own contract. The remedy, if desired, lies within defendant's control. Indeed, the leading Virginia case of Maryland Casualty Company v. Toney, 178 Va. 196, 16 S.E.2d 340, provides that if notice is given as required by the policy, then coverage is afforded until the expiration date of the policy. It so happened that, in Toney, the requirement as to notice was ten days following the date of the delivery of the other automobile and such notice was not given until the date of the accident which was 17 days after delivery. Cf. Inland Mutual Insurance Company v. Stallings, 4 Cir., 1959, 263 F.2d 852; Celina Mutual Insurance Company v. Cohen, 204 Va. 763, 133 S.E.2d 311.

The closest Virginia approach to the problem presented by this case is Reserve Insurance Company v. Odham, 203 Va. 590, 125 S.E.2d 874. The result in that case would tend to reflect against any theory of affording multiple coverage. We believe, however, that a careful scrutiny of the opinion may lead to the belief that, under certain circumstances, multiple insurance is afforded. Essentially the case involves an interpretation of Virginia statutes relating to the operation of vehicles engaged in transporting passengers or property for compensation. It is a far cry from the family automobile policy. In Odham, the facts were that one Morris had a fleet of four taxicabs and, when necessary, likewise operated as a taxicab a vehicle owned by Johnson. Three of Morris' taxicabs were included in a policy issued by Reserve Insurance Company, with limitations of liability of $10,000 for one injury or death and $20,000 for each accident, together with $5000 property damage coverage. Another taxicab owned and operated by Morris was covered in a separate policy issued by Reserve with the same limits. The limits required were the minimum specified by the State Corporation Commission as a condition to the issuance of a certificate or permit to operate. Reserve also insured the vehicle owned by Johnson with the same limitations. The accident giving rise to the litigation occurred when Morris' employee, Herring, was operating the Johnson car as a taxicab for Morris. A passenger in the taxicab was killed and his administrator recovered a judgment of $15,000 against Morris, his employee and Johnson. The insurance company paid the $10,000 under the Johnson policy. The certificate of insurance carried an endorsement reading as follows:

"1. The policy of insurance for which this certificate is issued is extended to cover any other motor vehicle owned or operated by the named insured in the transportation of passengers or property for compensation whether or not such motor vehicle is specifically named, numbered, or designated in the policy *when such insurance is required as above.*"

In interpreting the foregoing language the Supreme Court of Appeals of Virginia said that the words "required as above" applied to the minimum requirements of coverage, namely, $10,000 for one injury or death, $20,000 for one accident, and $5,000 for property damage. The Court further said that the General Assembly, by enacting § 56–299, did not intend to provide multiple insurance. However that may be, it is abundantly

clear that § 56–299 has no application to insurance provided under a family automobile liability policy. Indeed, it was pointed out that if the Johnson vehicle had been insured for only $5,000, then the Morris policy would have covered the balance of $5,000 required by the statute and the State Corporation Commission. Thus, to this extent, multiple insurance coverage is possible in Virginia under certain circumstances. We do not feel that Odham is authority to support the view of either the plaintiff or defendant in the case under consideration.

Following the syllogism pronounced in Imperial, we conclude that coverage under the family policy was afforded to Cecil R. Foster as "other insurance" and, therefore, the family policy is liable to the extent of $25/40$ths of the total coverage of $40,000.00. The end result is that the plaintiff is entitled to a judgment in the sum of $25,000.00, plus interest.

Counsel will prepare and present an appropriate judgment order in accordance with the memorandum.