**Richard J. CAREY, Appellee,**

v.

**STATE FARM MUTUAL INSURANCE COMPANY, Appellant.**

**No. 10476.**

United States Court of Appeals
Fourth Circuit.

Argued June 22, 1966.

Decided Oct. 6, 1966.

Bcreman, Circuit Judge, dissented.

J. B. Browder, Richmond, Va. (Hall & Fox, Newport News, Va., and Browder, Russell, Little & Morris, Richmond, Va., on brief), for appellant.

Montgomery Knight, Jr., Norfolk, Va. (Doumar, Pincus, Anderson & Knight, Norfolk, Va., on brief), for appellee.

Before SOBELOFF, BOREMAN and BRYAN, Circuit Judges.

SOBELOFF, Circuit Judge:

In a declaratory action to determine coverage under an automobile liability insurance policy, the District Court, sitting without a jury, entered judgment against the defendant insurer.[1] The insurance company's appeal challenges the District Court's conclusion that the automobile was covered under the policy. It also complains of the exclusion of certain proffered evidence bearing on the ownership of the automobile.

On September 1, 1961, the plaintiff, Richard J. Carey, was injured when his car collided with a 1961 Chevrolet driven by Cecil Foster, the son of Virgil Foster. As a result of the accident Carey recovered judgment against Cecil Foster in the amount of $45,000. It is not disputed that the Chevrolet was covered by a standard liability insurance policy, issued by the defendant to Cecil Foster and Virgil Foster as named insureds and effective for the period from June 27, 1961 to September 13, 1961. The defendant paid Carey its maximum liability of $15,000 under this policy, leaving $30,000 of the judgment unsatisfied.

This litigation grows out of a dispute over the interpretation of the term "owned automobile" contained in another policy, issued on December 20, 1960, by the defendant insurance company to Virgil Foster covering a 1956 Hudson owned by him. It was what the defendant calls a "family automobile" policy in the amount of $25,000, and was in force at the time of the accident. Carey made demand on the insurance company for the amount of this policy, in further satisfaction of the

$30,000 balance still due him on his judgment against Cecil Foster. Upon the insurer's denial of liability Carey brought this action for a declaratory judgment. The District Court gave judgment for the plaintiff,[2] holding that the Chevrolet was an "owned automobile" within the definition of the "family automobile" policy and therefore under its coverage.

I

The family policy provides that:

"PART I—LIABILITY

\* \* \* \* \* \*

*Persons Insured.* The following are insureds under Part I:

(a) With respect to the owned automobile,

(1) the named insured and any resident of the same household,

(2) any other person using such automobile, provided the actual use thereof is with the permission of the named insured;"

By endorsement on the policy, the definition of "owned automobile" was amended to provide as follows:[3]

" 'Owned Automobile' means

(a) a private passenger, farm or utility automobile described in the policy,

(b) a trailer owned by the named insured, provided with respect to Part III it is described in the policy,

(c) a private passenger, farm or utility automobile ownership of any of which is acquired by the named insured during the policy period, provided \* \* \*

(2) the company insures all private passenger automobiles, farm

---

1. 247 F.Supp. 381 (E.D.Va.1965).

2. Each policy contained an "Other Insurance" clause, which provided that if the insured had other insurance covering a loss described in the policy the company would be liable only for that proportion of the loss equal to the ratio of the maximum liability under the policy over the total amount of valid insurance in force on the automobile. The maximum

liability under the family policy was $25,000.00 and under the Chevrolet policy, $15,000.00. Recovery under the family policy was therefore 25/40ths of the total coverage of $40,000.00, i. e., $25,000.00.

3. This amendment was made pursuant to Admin. Order No. 6536 of the State Corporation Commission of Virginia, effective March 31, 1958.

automobiles and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company within 30 days following such date * * *."

The plaintiff maintains that when Virgil Foster acquired the Chevrolet on June 24, 1961 and then, on June 27, within 30 days, gave notice of this fact to the insurer by applying for and obtaining additional insurance covering this vehicle, it became an "owned automobile" under the definition in the family policy and was thus insured under that policy on the date of the accident.[4] The insurance company answers that an examination of the facts reveals that the parties did not intend to insure the Chrevolet under the family policy. Its position is that when Virgil Foster purchased additional specific insurance on the Chevrolet he thereby elected to insure it only under the specific policy and to waive any insurance available under clause (c) (2) of the family policy. The insurer also contends that the automatic insurance clause constituted merely an irrevocable offer to insure newly acquired vehicles, which the insured was required to accept within thirty days of the acquisition of a new vehicle. It argues that Virgil Foster's notification in the form of an application for additional specific insurance covering the Chevrolet operated as a counter-offer, which was accepted by it upon issuance of the June 26, 1961 policy containing terms and conditions different from those in the family policy.[5] Invoking general contract principles of offer and acceptance, the company says that its original "offer" was rejected by the "counter-offer" and the subsequent issuance of the specific policy covering the Chevrolet.

We agree with the District Court in its holding that the Chevrolet was insured under the family policy as an after-acquired automobile. The insurer is bound by the express terms of its contract of insurance. When those terms, taken in their ordinary sense, convey a clear and unambiguous meaning, a court cannot indulge in ferreting out hidden meanings or unexpressed intentions to relieve the insurer of liabilities assumed in the policy. When ambiguities arise, the intent of the parties is controlling; but if any doubt remained it would, under the familiar rule, be resolved in favor of the insured since the insurer formulated the language in the policy. See Imperial Casualty & Indemnity Co. v. Relder, 308 F.2d 761 (8th Cir. 1962); 13 Appleman, Insurance Law and Practice § 7482 (1943).

However, we find no ambiguity. The defendant, in clause (c) (2), expressly undertook to insure all after-acquired private passenger vehicles of the insured, provided that notice of the acquisition is given within 30 days. Virgil Foster gave the requisite notice when he requested the defendant to transfer the insurance on his old automobile—a Plymouth—to the Chevrolet. The defendant's position that this notice operated either as a waiver or counter-offer is untenable. Frequently, automobile owners are unaware of the extent of coverage provided by their liability policies. Policies are long, detailed, and printed in type so small as to discourage close reading by the ordinary policy holder to determine precisely the coverage provided. It would be unreasonable to ascribe to Virgil Foster an intention to waive any additional protection to which he was entitled or to reject it by applying for specific insurance on

4. The company has made no contention that it did not insure "all private passenger automobiles * * * owned by the named insured on the date of such acquisition [of an after-acquired vehicle] * * *."

5. The limits of the family policy were $25,000.00 to each person and $50,000.00 for each accident for personal injuries; and $5,000.00 for each accident for property damage. The limits in the Chevrolet policy were only $15,000.00, $30,000.00, and $5,000.00 respectively.

Coverage for death and disability and towing and labor costs was entirely eliminated in the Chevrolet policy.

the Chevrolet.[6] If the defendant intended to insure newly acquired automobiles only as long as no specific insurance was taken out to cover them, it could have stated this expressly. If, as defendant suggests, it is anomalous to have two policies covering the same automobile, specific language obviating this could have been included in the family policy. Indeed, the simple omission of the provision in question would have avoided all question. The provision means what it says.

■ Moreover, the inclusion of a further provision for a premium adjustment on the family policy in the event of the acquisition of an additional automobile strongly implies coverage.[7] While no premium adjustment was made on the family policy, the sequence of events from the acquisition of the Chevrolet to the date of the accident took only several weeks. The defendant may well have contemplated a premium adjustment in the future, but delay in billing for any additional premium that it might be entitled to claim would not relieve it from the obligation of its contract. Alternatively, the premium on the family policy may have been computed to reflect the possible acquisition of an additional automobile.

The Supreme Court of Appeals of Virginia construed the "owned automobile" provision in Celina Mutual Ins. Co. v. Cohen, 204 Va. 763, 133 S.E.2d 311 (1963). The question there was whether notice given after the expiration of the policy was effective to afford coverage under the "owned automobile" clause.

The court held that the language of the policy required notice to be given during the life of the policy and that, consequently, there was no coverage. In discussing the "owned automobile" provision, however, the court used language highly pertinent to the present case:

"It is manifest from a reading of the provisions of the policy that its purpose was to insure against all risks arising out of the operation of the automobile described in the policy, and, in addition, to provide coverage at the earliest possible moment of any after-acquired automobile, whether a replacement car or an additional automobile, provided the insured notified the insurance company of such change within the period prescribed in the policy." 133 S.E.2d at 314.

Here it is conceded that notice was given as required in the policy.[8]

In a case strikingly similar to ours, cited favorably in Celina[9] and relied upon by the District Court in this case,[10] the Eighth Circuit held for the insured under the "owned automobile" provision. There the defendant insurance company issued a family policy covering a 1956 Oldsmobile containing an "owned automobile" clause. Several months later, the insured purchased a 1959 Oldsmobile and took out insurance on it with another company. No notice was then given the defendant. Subsequently, the 1959 Oldsmobile was involved in an accident and the insured gave notice to the defendant, during the policy period, of both the acquisition of the 1959 Oldsmobile and the accident. In holding that the 1959 Olds-

---

6. See the opinion of the District Court, 247 F.Supp. at 384; see also Imperial Casualty & Indemnity Co. v. Relder, 308 F.2d at 763.

7. "If the named insured acquires ownership of an additional private passenger, farm or utility automobile * * * he shall inform the company within thirty days following the date of its delivery. Any premium adjustment necessary shall be made as of the date of such change or acquisition in accordance with the manuals in use by the company. The

named insured shall, upon request, furnish reasonable proof of the number of such automobiles * * * and a description thereof."

8. But see Reserve Insurance Co. v. Odham, 203 Va. 590, 125 S.E.2d 874 (1962) (holding of no coverage turned on construction of Virginia statutes relating to the operation of vehicles engaged in transporting passengers for compensation.)

9. 133 S.E.2d at 314.

10. 247 F.Supp. at 384–386.

mobile was covered under the family policy, the court stated:

> "It may well be that the insured was unaware of the fact that he had purchased additional or 'other insurance' as it is referred to in appellant's policy. That does not obviate the fact that the policy he purchased and paid for \* \* extended coverage to after-acquired automobiles and that no notice thereof to the company needed to be given excepting only within the policy period \* \* \*." Imperial Casualty & Indemnity Co. v. Relder, supra, 308 F.2d at 766.

The only notable differences between our case and *Imperial* are first, that there notice could be given at any time during the policy period; and second, that insurance on the after-acquired automobile was issued by another company. Neither distinction is significant in the decision of this case. In each case notice was given as prescribed by the policy; also there is no indication that the "other insurance" is limited to a policy issued by a different company.

## II

■■ Finally, we turn to the error assigned by the appellant to the District Court's exclusion of testimony, elicited on cross-examination of Virgil Foster, that all payments on the Chevrolet, with the exception of the last one immediately following the accident, were made by his son, Cecil Foster.[11] Appellant deems this testimony relevant on the question whether Virgil Foster actually "owned" the Chevrolet. Under the policy provisions only after-acquired automobiles "owned" by the insured are covered. Granting the relevance of the source of the payments, we find no prejudicial error in the ruling. The record shows that title to the Chevrolet was taken in the names of Virgil as well as Cecil. In addition, Virgil testified on cross-examination that he was "standing good for the payments on the car \* \* \*."[12] The fact that Cecil may have paid or

supplied money for installment payments would not impair the finding that Virgil was an owner; liability under the policy does not rest on sole ownership. See Davis v. St. Paul-Mercury Indemnity Co., 294 F.2d 641, 649 (4th Cir. 1961).

Affirmed.

BOREMAN, Circuit Judge (dissenting):

I must respectfully note my disagreement with the result reached by the majority. "Ownership" of the 1961 Chevrolet which my brothers think was covered by the "family" policy issued to Virgil on December 20, 1960, by State Farm, raises a question of fact to be determined by the trier of fact.

Looking to the evidence I note that Cecil Foster was Virgil's son; Cecil was working away from home in Pittsburgh, Pennsylvania, and needed a car for travel to and from his place of employment; Virgil owned a Plymouth which was covered by a separate policy of insurance issued by State Farm; the Plymouth was traded in on the Chevrolet (purchased on June 24, 1961) as part or perhaps all of the down payment and the balance was being financed through G.M.A.C.; Cecil was a minor, eighteen years old, and needed a responsible cosigner to complete financing arrangements; Virgil signed the financing papers with his son; Cecil made all the monthly payments as they came due except the last one which fell due after he was injured in the accident and Virgil paid it; Virgil considered it an obligation of Cecil's as shown by Virgil's testimony—"Yes, sir, I took *his obligation* over"; the State Farm agent was merely instructed to transfer the separate policy on the Plymouth to the Chevrolet and this was done.

The "family policy" provided that an acquired passenger car, *owned* by the named insured although not specifically described in the policy could be covered upon notice by the *named insured* within thirty days following the date of such

11. Record, pp. 51–54.

12. Id. at 54.

acquisition. The only notice which State Farm's agent had was that Cecil *and* Virgil, *not* Virgil, had acquired a Chevrolet and that a separate policy on Virgil's Plymouth, for which a separate premium had been paid, was to be transferred to the Chevrolet.

The Chevrolet involved in the accident was shown on the title certificate as in the joint names of Virgil and Cecil Foster. It is understandable how this may have occurred since both parties obviously signed the papers at the time the car was acquired and financed. Two questions naturally arise which are not satisfactorily answered. (1) Why would Cecil be included in such evidence of ownership as provided by the title certificate if Virgil, the named insured in the policy, was acquiring the car for himself? (2) Why would Cecil pay for his father's car? The endorsement on the family policy provides that any automobile qualifying for automatic coverage must be *owned by the named insured:*

> "(c) A private passenger, farm or utility automobile ownership of any of which is acquired by the named insured during the policy period, provided * * *."

I am persuaded that true ownership of the Chevrolet was a most relevant issue in the case.

The certificate of title to the Chevrolet in the names of Virgil and Cecil Foster was introduced in evidence and this constituted the only direct evidence of ownership of the vehicle. The judge below, in referring to titling of the Chevrolet, observed during the trial that "I assume it was put in both names because one was an eighteen year old boy." Counsel for State Farm wished to show, in cross-examining Virgil Foster, that his son, Cecil, was the sole owner of the car and that the title was partly in the father's

name because of necessity or convenience due to Cecil's minority and the requirement that the unpaid purchase price be secured. Upon objection, the court excluded evidence tending to prove that the Chevrolet was actually owned by Cecil upon the apparent theory that this was an impermissible effort on the part of State Farm to "go beyond the mere term 'ownership' as it applies to title and * * * show that in fact that Cecil R. Foster was the true owner." In other words, the District Court excluded all evidence which would conflict with such evidence of ownership as supplied by the title certificate.

In Scott v. State Farm Mutual Auto. Ins. Co., 202 Va. 579, 118 S.E.2d 519 (1961), ownership of a motor vehicle was involved. One George E. Bower and his son, Robert, who was nineteen years of age and resided with his father, purchased an automobile from a used car dealer for $250.00 cash. Of this purchase price the father paid $50.00 and Robert paid the balance of $200.00. The automobile was titled in the father's name because of the son's minority. The court held:

> "While *it is true* that the title certificate showed George E. Bower to be the owner of the automobile, it was not conclusive but only prima facie evidence of ownership. United States Cas. Co. v. Bain, 191 Va. 717, 720, 62 S.E.2d 814–815."

In the *Bain* case cited in the foregoing quotation it was held that the title certificate is not conclusive of ownership in Virginia, the non-titleholder "was the sole owner" and consequently the titleholder had *no* ownership of the vehicle.

Since, in my opinion, it was error to exclude evidence to show that Virgil was not the true owner of the Chevrolet, I think a new trial should be ordered.