378 F.2d 312
 ST. PAUL MERCURY INSURANCE COMPANY and State Farm Mutual Automobile Insurance Company, Appellants,
v.
PENNSYLVANIA LUMBERMEN'S MUTUAL INSURANCE COMPANY, a corporation, Eusebio Gallardo, Varndell Gallardo, John W. Carn, Andrew Carn, and Feliciano D. Garcia, individually and as Administrator of the Estate of John Delano Garcia, deceased, Appellees.
PENNSYLVANIA LUMBERMEN'S MUTUAL INSURANCE COMPANY, Appellant,
v.
ST. PAUL MERCURY INSURANCE COMPANY and State Farm Mutual Automobile Insurance Company, Appellees.
 No. 11012.
 No. 11013.
 United States Court of Appeals Fourth Circuit.
 Argued March 7, 1967.
 Decided April 28, 1967.
 
 William H. Vaughan, Jr., Charleston, S. C., for State Farm Mut. Auto. Ins. Co.
 Edward D. Buckley, Charleston, S. C., for St. Paul Mercury Ins. Co. (Bailey & Buckley and Grimball & Cabaniss, Charleston, S. C., on brief).
 Joseph H. McGee, Jr., and Pledger M. Bishop, Jr., Charleston, S. C. (Moore, Mouzon & McGee, Charleston, S. C., on brief), for Pennsylvania Lumbermen's Mut. Ins. Co.
 Before HAYNSWORTH, Chief Judge and BRYAN and BELL, Circuit Judges.
 PER CURIAM:
 
 
 1
 A family automobile liability insurance policy written by Pennsylvania Lumbermen's Mutual Insurance Company in the name of Eusebio Gallardo, on a Mercury automobile owned by him, was held in this declaratory judgment action not to cover a second car, a 1957 Chevrolet acquired by him during the term of the policy, despite its clause describing in the following words what other cars owned by him are included in the protection:
 
 
 2
 "Definitions: Under Part I:
 
 
 3
 * * * * * *
 
 
 4
 "`owned automobile' means
 
 
 5
 * * * * * *
 
 
 6
 "(c) a private passenger, farm or utility automobile ownership of which is acquired by the named insured during the policy period, provided
 
 
 7
 * * * * * *
 
 
 8
 (2) the company insures all private passenger, farm and utility automobiles owned by the named insured on the date of such acquisition and the named insured notifies the company during the policy period or within 30 days after the date of such acquisition of his election to make this and no other policy issued by the company applicable to such automobile * * *."
 
 
 9
 This provision is known as automatic insurance of a subsequently purchased car.
 
 
 10
 St. Paul Mercury Insurance Company, joined by intervening plaintiff State Farm Mutual Automobile Insurance Company, brought this action for a declaration of Lumbermen's primary liability under the policy. Defendants were Lumbermen's, its insured Eusebio Gallardo, and his son Varndell, plus the tort-plaintiffs in two suits against Varndell, one for death and the other for personal injury, predicated on his negligent driving of the 1957 Chevrolet upon a South Carolina highway on January 13, 1964 — a date within the policy period of one year commencing September 3, 1963. Both the deceased and the injured person, riding as Varndell's guests, were insured, respectively, by State Farm and St. Paul under policies covering other automobiles.
 
 
 11
 Were Lumbermen's, over its disclaimer, found as the insurer of the Chevrolet, of course it would be liable to tort judgment creditors. Otherwise, the latter's insurers would be answerable under the South Carolina uninsured motorists statute. St. Paul has settled the claim of its insured for an amount conceded to be reasonable by Lumbermen's. The estate of the State Farm insured has secured a judgment against Varndell which is elsewhere on appeal. St. Paul and State Farm look to Lumbermen's for indemnity.
 
 
 12
 The District Court's decision exonerating Lumbermen's was based on the finding that although the 1957 Chevrolet was owned by Eusebio, and although Lumbermen's insured the only other car owned by Eusebio — the Mercury — the Chevrolet was not embraced within the automatic insurance clause of the policy because Eusebio had declined its coverage. As the effect of the Court's decree was to remove insurance from Varndell and to render the two uninsured-driver insurers liable, they appeal. To secure its escape from responsibility for Varndell's liability to the tort-plaintiffs, Lumbermen's cross-appeals against the holding that Eusebio and not Varndell was the Chevrolet's owner.
 
 
 13
 The facts pertinent to ownership of the automobile may be briefly recited. Told he could not purchase the 1957 Chevrolet by a dealer cognizant of his minority, but having signed a tentative sales order at the dealer's direction, Varndell returned to the lot a day or two later in November 1963 with his father, Eusebio, who thereupon signed both a conditional sales contract and a State registration application. The salesman deposed that he considered Eusebio the buyer. Title papers subsequently issued to Eusebio. Varndell paid the State its registration fee plus an additional $20.00 as an uninsured motorist, and traded an older automobile, financed in his brother's name but registered in his, toward the down payment. Thereafter he made the monthly payments for which his father was liable. Only two were due before the accident. Varndell continued to live with his parents. His mother often drove the automobile, without seeking her son's permission, primarily to transport him to and from his work, as Varndell's driver's license had previously been suspended by the State. On the evidence the District Court cannot be declared clearly in error in holding Varndell was not the owner, and we so affirm its finding of Eusebio's proprietorship, denying the cross appeal of Lumbermen's.
 
 
 14
 The decision that Eusebio had elected to forego coverage is another matter. Under the automatic insurance clause Eusebio's policy covered the Chevrolet provided he notified "the company during the policy period or within 30 days after the date of * * * acquisition of his election to make this * * * policy * * * applicable * * *." Thus the election was open until September 3, 1964, almost 10 months after the Chevrolet's purchase. Unaware of such provision, Varndell's mother, who transacted the family business, obtained from the Lumbermen's agent who sold the original policy a quotation on insurance for Varndell. According to her deposition and testimony before the Court, neither she nor the agent discussed the possibility of an election under the existing policy, although the date of their conversation — and of the accident as well — was well before the expiry of the election period. The agent was never deposed or examined, so Mrs. Gallardo's testimony stands uncontroverted.
 
 
 15
 Rejecting the premium quoted on the separate policy as too high, she contacted another insurer, but the accident intervened before any policy was secured from that source. Eusebio was aware of his wife's negotiation and had certified to the Highway Department that the auto was uninsured when the uninsured motorist fee was paid.
 
 
 16
 We have carefully reviewed the transcripts and record, and the facts just set out cannot be gainsaid. They, Lumbermen's contends, establish an election by Eusebio, through his wife, against its coverage of the Chevrolet. We disagree. See Carey v. State Farm Mutual Insurance Company, 367 F.2d 938 (4 Cir. 1966). Nor would it change the result to impute knowledge of the policy's terms to these unschooled insureds. Even had she known of the option to elect expanded coverage, ample time remained for her decision. Indeed, it would have been imprudent of her to reject coverage, had a more advantageous contract been available, until such other policy was in fact secured. The option in her family policy afforded her time to shop and to compare. There would have been no binding waiver had she merely declined to accelerate her right to elect, even with full knowledge. Nor can Lumbermen's hold its insureds to a shorter period of election or notice than that stated in the terms of the present policy.
 
 
 17
 We are, therefore, compelled to overturn, as "clearly erroneous", the finding of an election against coverage, and reverse on the appeal of St. Paul and State Farm. Since no election had occurred at the time of the accident, it is axiomatic that the automatic coverage of the Chevrolet continued. To decide otherwise would denude the policy's clause of meaning. Hall v. State Farm Mutual Automobile Insurance Company, 268 F.Supp. 995 (E.D.S.C.1966), aff'd per curiam, 378 F.2d 371 (4 Cir. decided April 25, 1967); cf. Carey v. State Farm Mutual Insurance Company, supra, 367 F.2d 938, 942.*
 
 
 18
 No. 11,012 — appeal — reversed.
 
 
 19
 No. 11,013 — cross-appeal — affirmed.
 
 
 
 Notes:
 
 
 *
 Judge Bell, a member of the panel, expressed his concurrence in the resolution of this appeal, but his death occurred before the filing of the decision