**COMMONWEALTH FIRE & CASUALTY INSURANCE CO., Appellant,**

v.

**Patrick A. SANDIFER et al., Appellees.**

Court of Appeals of Kentucky.

Dec. 18, 1970.

William D. Lambert, Ogden, Robertson & Marshall, Louisville, for appellant.

Joseph E. Stopher, Edwin O. Davis, Louisville, Richard D. Finley, Milwaukee, Wis., John L. Bennett, Louisville, for appellees.

DAVIS, Commissioner.

The issue on appeal involves construction of language in automobile liability insurance policies. A declaratory judgment action resulted in an adjudication unfavorable to the insurance company, Commonwealth Fire & Casualty Insurance Company (Commonwealth), and this appeal challenges the propriety of the judgment.

On October 8, 1967, appellee Richard Sandifer was driving a 1965 Chevrolet automobile owned by his father, appellee Patrick Sandifer, when the car collided with a vehicle driven by appellee Marie Sluter. Mr. Sluter, along with Mr. and Mrs. Landrath, were passengers in the Sluter automobile and are appellees.

Mr. and Mrs. Sluter and Mr. and Mrs. Landrath filed suit seeking recovery for alleged personal injuries and property damages against the Sandifers, asserting claims aggregating $113,000. The Sandifers instituted the present declaratory judgment action against Commonwealth and the Sluters and Landraths.

At the time of the accident on October 8, 1967, Commonwealth had in effect a liability insurance policy affording coverage to Patrick Sandifer on the 1965 Chevrolet involved in the accident. By the terms of that policy, to which we shall refer as Policy A, liability insurance was afforded to the extent of $10,000 for bodily injury liability for each person, $20,000 maximum coverage for bodily injury liability for

each occurrence, and $5,000 maximum property damage liability for each occurrence. This coverage is referred to as "10–20–5."

Commonwealth had in effect on the date of the accident a separate policy in favor of the Sandifers covering a 1967 Chevrolet in which the policy limits were $25,000 for bodily injury liability, for each person, $50,000 for bodily injury liability for each occurrence, and $10,000 for property damage liability for each occurrence—"25–50–10." The judgment on appeal declared that Commonwealth is liable to pay in behalf of the Sandifers damages up to the combined limits of *both* policies. Commonwealth contends that the limit of its liability was fixed by the terms of Policy A, at "10–20–5."

By way of background reflecting the insurance history between Commonwealth and Patrick Sandifer, it appears that in February 1964 Commonwealth issued to Sandifer one policy covering two cars then owned by him, a 1962 Plymouth and a 1958 Chevrolet. The coverage limits of that policy were 25–50–10 on the Plymouth and 10–20–5 on the Chevrolet.

In December 1964, Sandifer purchased the 1965 Chevrolet which was involved in the accident, and the 1965 Chevrolet was substituted for the Plymouth in the original policy, with coverage of 25–50–10. In December 1965, Sandifer bought a 1964 Chevrolet which was substituted for the 1958 Chevrolet in the renewal of the original policy, with coverage of 10–20–5.

In February 1966, upon the expiration of the original policy and its renewals, Commonwealth issued two policies to Sandifer; one of them was Policy A covering only the 1965 Chevrolet (involved in the accident), affording coverage of 25–50–10 which was the same coverage on that car which existed under the previous policy.

Policy B, simultaneously issued with Policy A, covered only the 1964 Chevrolet and contained coverage of 10–20–5, which was again the same coverage ascribed to the 1964 Chevrolet in the prior policy.

In July 1967, Sandifer bought a 1967 Chevrolet which was substituted for the 1964 Chevrolet in Policy B. At Sandifer's written request, the coverage on the 1967 Chevrolet, under Policy B, was increased from 10–20–5 to 25–50–10; the coverage on the 1965 Chevrolet, under Policy A, was decreased from 25–50–10 to 10–20–5. The annual premium on Policy A, insuring the 1965 Chevrolet, after adjustment of limits to 10–20–5, was $163.55; the annual premium on Policy B, covering the 1967 Chevrolet with limits of 25–50–10, was $176.96.

Fundamentally, the trial court based its judgment on the finding that the 1965 Chevrolet was an "owned automobile" as defined in Policy A and was an "additional automobile" as defined in Policy B. Each of the policies contained identical provisions relating to automobiles covered and payment of premiums in the following language:

"2. Automobiles Covered

(a) 'owned automobile' means the vehicle described in the Declarations, and, as defined herein, any replacement automobile, any additional automobile, any temporary substitute automobile, and any trailer owned by the named insured;

(b) 'replacement automobile' means any other private passenger or utility automobile of which the named insured acquires ownership, provided it replaces the owned automobile and notice of its substitution be given Commonwealth within 30 days after delivery;

(c) 'additional automobile' means an additional private passenger or utility automobile of which the named insured acquires ownership, if (1) Commonwealth insures all private passenger and utility automobiles owned by the named in-

sured on the date of its delivery and (2) notice of its delivery be given to Commonwealth within 30 days after delivery;"

\* \* \* \* \* \*

"Payment of premium

If the named insured acquires an additional automobile, the premium shall be adjusted as of the date of the delivery of such automobile. The named insured shall pay any additional premium required."

Commonwealth points out that if the 1967 Chevrolet had been regarded as an "additional automobile" and provided with the same coverage under Policy A, the annual premium on Policy A would have been $332.81, not $163.55. Likewise, if the 1965 Chevrolet had been an "additional automobile" and provided with the same coverage under Policy B, the annual premium for that policy would have been $353.31 instead of $176.96. Thus, the total premiums would have been $686.12 per year instead of $340.51.

Perhaps the position of the appellees, accepted by the trial court, may best be understood from the following quotation from appellees' brief:

"So what we have is that the policy declares that if the assured acquires an 'additional automobile' it *likewise* (not *'instead of'* the named vehicle) is covered under the policy. It does not say 'unless we have another policy on the car.' It does not say 'unless some *other* company has a policy on the second automobile.' It does not say provided the 'Additional automobile was acquired *after* the one named in the policy.' It makes no restrictions at all. It just says the second 'additional automobile' is covered under the policy. Period."

\* \* \* \* \* \*

"So the simple crux of the situation is the appellant now wants the Court to say this policy has in it the phrase 'later acquired' where it mentions an 'additional automobile.' How can the Court do that?"

On the other hand, the appellant contends that the obvious intention and understanding of Commonwealth and Sandifer were that the 1965 Chevrolet was insured with limits of 10–20–5 and the 1967 Chevrolet was insured with limits of 25–50–10. Appellant asserts that this position is bolstered by the fact that Sandifer made written request for the exact coverages on each of the vehicles and only paid the respective premiums affording the designated coverage for each car.

Commonwealth urges that the obvious purpose of the "additional automobile" provisions in the policies is to provide automatic coverage for any or all automobiles acquired subsequent to the policy date, provided timely notice and appropriate premium adjustments are made. It points to the quoted language defining "additional automobile" as one of which the named insured *acquires* ownership. It is argued that the plain meaning of that language contemplates subsequent acquisition. Appellant directs the court's attention to Blashfield Automobile Law and Practice, Third Edition, Volume 7, Section 316(3), pages 656–657, in which it is written:

"An automatic insurance provision is for the benefit of the insured, and its purpose is to extend coverage to the person already insured with the company in question with respect to the operation or maintenance of another automobile acquired by him, which is not described in the policy, as a replacement for the automobile originally covered or as an additional automobile when the company insures all the automobiles of insured. Once specific insurance is purchased and the automobile becomes described in the policy, it is no longer a 'newly acquired automobile' but is a 'described automobile' and the terms and provisions under the 'automatic insurance' or 'newly ac-

quired automobile' clause are no longer applicable."

Each of the litigants has cited decisions from foreign jurisdictions as supporting his position. The appellees rely chiefly on Carey v. State Farm Mutual Ins. Co., 247 F.Supp. 381 (1965), a decision of the U. S. District Court for the Eastern District of Virginia, and authorities relied upon in that opinion.

In Carey, an accident occurred on September 1, 1961, involving a 1961 Chevrolet owned by Foster. Judgment for $45,000 went against Foster; the liability limits of a policy on the 1961 Chevrolet were 15–30 respecting personal injuries. That policy was issued for the period of June 27, 1961, to September 13, 1961. The same company had in force another liability policy insuring Foster's 1956 Hudson automobile. The Hudson policy was already in force when the Chevrolet policy was issued, and provided limits of 25–50 for personal injuries. In a declaratory judgment action, the U. S. District Court ruled that under the facts before it the insurance company's liability was not limited to the sums prescribed in the Chevrolet policy. The court held that coverage was afforded under the Hudson's policy as "other insurance," thus fixing the liability under the Hudson policy as 25⁄40ths of the total coverage of $40,000 (for each person) as fixed by the two policies considered together.

It is at once apparent that one significant distinction exists in the factual background in Carey and in the present case. In Carey, the 1961 Chevrolet was acquired *after* the effective date of the Hudson policy. In the present case, the 1965 Chevrolet was already owned by Sandifer when the policy covering the 1967 Chevrolet was issued. The language of the policies involved in Carey is somewhat different from the language in the policies presently under consideration. It is noted by appellant that the Supreme Court of Kansas criticized Carey and refused to follow it in

Bramlett v. State Farm Mutual Automobile Ins. Co., 205 Kan. 128, 468 P.2d 157.

The appellees maintain that the result urged by Commonwealth requires adding language to the policy respecting "additional automobile." For example, appellees assert that words such as "later acquired automobile" must be added to the policy before the result sought by Commonwealth can be reached.

It would appear, however, that the language used in the policy plainly connotes reference to a "later acquired automobile," without the necessity of inserting such terminology by judicial fiat. It will be recalled that the policy definition is thus expressed:

"(c) 'additional automobile' means an additional * * * automobile of which the named assured *acquires* ownership * * *." (Emphasis added.)

To obtain the result sought by appellees would require that the word "acquires" be construed as including within its scope "or has already acquired." It seems too plain for debate that ordinary understanding of language impels the conclusion that the just-quoted policy provision envisions the acquisition of an additional automobile at a time subsequent to the occasion on which the language was used. This construction is bolstered by considering also the word "additional" used in the definition. In ordinary parlance the term "additional" connotes that something is added.

It is not without significance that the same Paragraph (c) which defines an "additional automobile" predicates Commonwealth's coverage of such a vehicle on (1) Commonwealth's coverage of all cars of the insured on the date of delivery of the additional car (a condition which existed), and upon (2) "notice of its delivery * * * to Commonwealth within 30 days after delivery." It cannot be gainsaid that the quoted words envision the subsequent delivery of an automobile, with appropriate grace period *after* its delivery within

which to inform the company of its acquisition. Unquestionably, the language used in the policy, considered in its ordinary meaning, purports to relate to future events—not conditions which already had occurred when the policy was written.

Also noteworthy is the policy provision stating:

> "If the named insured acquires an additional automobile, the premium shall be adjusted as of the date of the delivery of such automobile. The named insured shall pay any additional premium required."

All of the quoted language bespeaks reference to an event which may occur in the future. "If the named insured acquires" certainly connotes something that may happen, not something that has happened. The adjustment of premium "as of the date of delivery" could hardly be thought to embrace such an adjustment to a date *earlier* than the issuance of the policy containing the language. If that were intended, why not designate each car by description in one policy?

Appellees contend that the "pro-rata" clause of the policy would be meaningless without adoption of the construction they urge. Explicitly, their thesis on this score is thus couched in their brief:

> "Unless both policies apply, what is the need of the 'pro-rata' clause? Since the policy says it is not in effect unless this company insures *all* of the automobiles the insured owns, what difference does it make whether the payment is from policy 'A' or policy 'B'?"

This argument is fallacious. The policy does *not* provide that all of its coverages are negated if some company other than Commonwealth affords coverage. The requirement that Commonwealth's coverage be exclusive relates only to an "additional automobile" as defined in Section 1, Part 1, Paragraph 2(c). The "pro-rata" provisions would be applicable, hence meaning-*ful, in all* other respects.

It is the court's conclusion that the limits fixed by Policy A (10–20–5) are the maximum applicable limits of Commonwealth's liability.

The judgment is reversed for entry of a new judgment consistent with the opinion.

All concur.