## CIRCUIT COURT OF BATH COUNTY

State Farm Mutual
Automobile Ins. Co.

v.

Clarence E. Perry,
Administrator of the Estate of
Wilma Jean Puffenbarger Perry,
deceased, et al.

August 19, 1980

Case No. 402

BY JUDGE ROSCOE B. STEPHENSON, JR.

By this declaratory judgment proceeding, State Farm Mutual Automobile Insurance Company contends that the court should construe a policy it issued so as to exclude coverage on a certain 1973 Chevrolet Vega automobile involved in an accident because, as State Farm further contends, said automobile was neither an owned nor a non-owned automobile under the terms of its policy.

There is no material dispute of the facts. On July 21, 1979, the 1973 Vega automobile, while being driven by Henry William Ellis Pettis, was involved in an accident resulting in the death of Wilma Jean Puffenbarger Perry. The administrator of the decedent's estate filed suit for his decedent's wrongful death against Henry Pettis, his wife, Doris Pettis, and his father-in-law, James Webster. This wrongful death action is being defended by Allstate Insurance Company, which issued a liability policy on the 1973 Vega. The decedent's administrator has made demand upon State Farm to extend liability coverage because State Farm had issued an automobile liability policy to Henry Pettis on a 1966 Pontiac automobile. State Farm denies coverage on the ground that its policy does not extend to the 1973 Vega because the Vega was neither an "owned automobile" nor a

"non-owned automobile" as those terms are defined in State Farm's policy.

Henry and Doris Pettis were married on March 10, 1973, and, at that time, Henry owned the 1966 Pontiac which was then operational. Doris Pettis, at that time, owned a 1971 Vega which was insured by Allstate in her name and in the name of her father, James Webster. In 1978, Doris Pettis traded the 1971 Vega for the 1973 Vega. The 1973 Vega was titled in the names of Doris Pettis and James Webster because Mr. Webster agreed to assist Mr. and Mrs. Pettis financially by carrying the 1973 Vega on his policy with Allstate, as had been the case with the 1971 Vega, and because the bank which made the loan on the 1973 Vega wanted both names on the loan, as had been the case previously. Mr. Webster made the premium payments to Allstate, and Henry Pettis made the bank payments on the 1973 Vega from May, 1978, until July, 1979. After July 1, 1979, both Mr. and Mrs. Pettis contributed to the bank payments on the 1973 Vega.

From May, 1978, until the date of the accident, the Pontiac was inoperable and was being repaired by Henry Pettis. During this time period (in May, 1979), Henry Pettis obtained the policy with State Farm. From May, 1978, until the accident, Henry Pettis had access to the 1973 Vega regularly, and Mr. and Mrs. Pettis resided in the same household as husband and wife.

In order for State Farm to owe coverage to Henry Pettis, he must have been operating either an "owned automobile" or a "non-owned automobile" as defined by State Farm's policy. Therefore, the questions presented are (1) whether the 1973 Vega is an "owned automobile" as defined by the policy, and (2) whether the Vega is a "non-owned automobile" as defined by the policy.

State Farm contends that the Vega is neither an "owned automobile" nor a "non-owned automobile," and the Administrator of decedent's estate, on the other hand, contends that it is both an "owned automobile" and a "non-owned automobile," as defined by the policy in question.

The policy provides in pertinent part the following:

Persons Insured. The following are insureds under Part I:
    (a) with respect to the owner automobile,
        (1) the named insured and any resident of the household . . . .

(b) with respect to a non-owned automobile,

    (1) the named insured;

    (2) any relative, but only with respect to a private passenger automobile or trailer, provided his actual operation . . . is with the permission of the owner . . . .

Definitions Under Part I:

"named insured" means the individual named as named insured in the declarations and also includes his spouse, if a resident of the same household . . . .

"relative" means a relative of the named insured who is a resident of the same household;

"owned automobile" means

    (a) a private passenger . . . automobile described in this policy . . . .

    (b) a trailer owned by the named insured,

    (c) a private passenger . . . automobile . . . acquired by the named insured during the policy period, provided

        (1) it replaces an owned automobile . . .

    (d) a temporary substitute automobile; "temporary substitute automobile" means any automobile or trailer, not owned by the named insured, while temporarily used with the permission of the owner as a substitute for the owned automobile or trailer when withdrawn from normal use because of its breakdown, repair, servicing, loss or destruction;

"non-owned automobile" means an automobile or trailer not owned by or furnished for the regular use of either the named insured or any relative, other than a temporary substitute automobile . . . .

The parties agree that in order for the Vega to be an "owned automobile," it must meet the test of a "temporary substitute automobile."

As previously stated, "temporary substitute automobile" is defined in the policy as one *"not owned by the named insured,* while *temporarily* used with the permission of the owner as a substitute for the owned automobile . . . when withdrawn from normal uses because of its breakdown, repair . . . ." (Emphasis added.)

State Farm argues that since the Vega was owned by one included within the definition of "named insured" (i.e., the spouse of the

insured named in the policy) and since the Vega was used regularly for approximately fourteen months, it cannot be held to be a "temporary substitute automobile." The Administrator argues that the existence of Mr. Webster's name on the Vega certificate of title means that the Vega was "not owned by the named insured." To support this contention he relies primarily on the West Virginia case of *Farley v. American Automobile Insurance Co.*, 137 W. Va. 455, 72 S.E.2d 520 (1952).

In *Farley*, the policy in question defined "insured" so as to include the named insured and any person using the automobile with the permission of the named insured. Among the definitions of "automobile" was "temporary substitute automobile" which was "an automobile not owned by the named insured while temporarily used as the substitute for the described automobile while withdrawn from normal use because of its breakdown, repair . . . ."

The *Farley* policy was issued on December 5, 1950, in the names of Earl Farley and Harry Wallace to cover a specific 1950 Ford truck. On February 1, 1951, Earl Farley had an accident while driving a 1948 Ford truck owned by Harry Wallace, one of the insureds, while the 1950 Ford truck (which was described in the policy) was being repaired.

The court held in *Farley* that the substituted vehicle was not owned by the named insured even though Harry Wallace was one of the parties named in the insurance policy.

There is no Virginia case in accord with *Farley*. To the contrary, the one case dealing with this question involving Virginia law, *Cary v. State Farm Mutual Insurance Co.*, 367 F.2d 938 (4th Cir. 1966), holds to the contrary. In *Cary*, the certificate of title to the automobile in question was issued in the names of two persons, father and son. The court held there was liability coverage under a policy issued in the name of the father only, saying, "liability under the policy does not rest on sole ownership." Id. at 943. Thus, under the *Cary* holding, *any* ownership interest by either Mr. or Mrs. Pettis is sufficient to bring them within the definition of "named insured" under the policy involved in this suit.

The court, in the present case, is of opinion that *Farley* should not be followed, but, assuming *arguendo* that it should be, the court is of the further opinion that the Vega was not a "temporary substitute automobile." The evidence proved that Mr. Pettis used the Vega for

a fourteen-month period. In *Armstrong, Admr. v. Nationwide Mutual Insurance Co.*, 215 Va. 333, 209 S.E.2d 903 (1974), the substitute vehicle had been used slightly over three months by the named insured. The Virginia court held that that length of time showed the substitution was unlimited or indefinite in duration and, therefore, it was not "temporary." In the present case, fourteen months had elapsed since the Pontiac automobile owned by Mr. Pettis became inoperable. When, if ever, it would again be operable was not disclosed by the evidence. Like *Armstrong*, the substitution in the present case "was of an unlimited or indefinite duration," and "was not of a temporary nature for a limited time."

The court is of the further opinion that the Vega was not a "non-owned automobile" as defined by the policy. The definition reads:

> "Non-owned automobile" means an automobile . . . not owned by or furnished for the regular use of either the named insured . . . other than a temporary substitute automobile . . . .

For the reasons previously stated, the automobile was owned by the named insured. Moreover, the undisputed evidence shows that Mr. Pettis made regular use of the automobile on a day-to-day basis for any purpose he chose for a period of fourteen months. If non-owned vehicles which are regularly used by the named insured were not excluded from the policy, an insured could pay for one policy and be covered by that policy for any car which may be furnished to him for his regular use. *See, State Farm Mutual Automobile Insurance Co. v. Smith*, 206 Va. 280, 289, 142 S.E.2d 562, 568 (1965); *Berry v. State Farm Mutual Automobile Insurance Co.*, 340 F. Supp. 228, 231 (E.D. Va. 1972).

As stated in *Pilot Life v. Crosswhite*, 206 Va. 558, 561, 145 S.E.2d 143, 146 (1965):

> Contracts of insurance are to be liberally construed in favor of the insured, but if they are plain and clear and not in violation of law or inconsistent with public policy, we are bound to adhere to their terms. It is the function of the court to construe the language of the contract as written, and the court cannot make a new contract for the parties different from that plainly intended and thus create a liability not assumed by the insurer . . . .

From a construction of the policy in the present case, the court concludes and holds that State Farm owes no coverage on the 1973 Vega automobile involved in the accident which resulted in the death of Wilma Jean Puffenbarger Perry.