JIM EBY, Plaintiff and Respondent, v. FOREMOST IN-
SURANCE COMPANY, a Michigan Corporation, Defend-
ant and Appellant.
No. 10312.
Submitted April 2, 1962. Decided August 23, 1962.
Rehearing denied October 16, 1962.
374 P.2d 857.

(62)

Richard J. Carstensen, Billings, for appellant.

Wiggenhorn, Hutton, Schiltz & Sheehy, Billings, John C. Sheehy, Billings, argued orally, for respondent.

MR. JUSTICE DOYLE delivered the Opinion of the Court.

This is an appeal from a judgment of the district court of the thirteenth judicial district of the State of Montana, in and for the County of Yellowstone.

In May 1957, respondent purchased a second hand 1954 Duo Model mobile trailer for $3,800, at which time he insured the trailer against loss by hail with the appellant.

On June 7, 1958, a hail storm of unusual severity occurred in the City of Billings and caused substantial damage to the roof, one window and the front and rear outside of the trailer.

Shortly after the hail storm the adjusters for the appellant

Insurance Company called on the respondent, inspected the damage and took pictures of the trailer. The adjusters determined there was one broken window, one coat of paint was needed on the roof, and that all other damage to the trailer was that of "appearance damage." Appellant contends that "appearance damage" does not change the trailer's value or use as a home.

It is further uncontradicted that the Insurance adjusters were instructed to calculate appearance damage by figuring the decrease in the fair market value of this trailer by the reason of appearance damage and were further definitely instructed not to obtain repair estimates.

The respondent on September 10, 1958, obtained an estimate from the North Star Body and Trailer Repair in Billings, which at that time seemed to be the only firm engaged in the repair of trailers. Mr. Dabner of this company estimated the total damage to be $999.67.

The entire matter revolves around a clause in the insurance policy which is as follows:

*"Limit of Liability; settlement; no abandonment."*

"The limit of the company's liability for loss shall not exceed the actual cash value of the mobile home, or if the loss is of a part thereof the actual cash value of such part, at time of loss, nor what it would then cost to repair or replace the mobile home or such part thereof with other of like and quality, with deduction for depreciation, nor the applicable limit of liability stated in the declarations.

"The company may pay for the loss in money or may repair or replace the mobile home(s) or such part thereof, as aforesaid, or may return any stolen property with payment for an resultant damage thereto at any time before the loss is paid or the property is so replaced, or may take all of such part of the mobile home(s) at the agreed or appraised value but there shall be no abandonment to the company."

The trial court heard this case without a jury and entered

its findings of fact and conclusions of law awarding judgment to the respondent on February 21, 1961. The appellant's motion for new trial was denied, whereupon this appeal followed.

The appellant has specified many errors. The first specification of error is as follows:

"1. The Court erred in admitting the repair estimate, plaintiff's exhibit No. 2 in evidence." This specification is also designated as Nos. 7 and 10 in appellant's brief.

In support of this contention, appellant argues that the respondent is not entitled to collect more money from the insurance company than his actual damages from this hail storm, and that the proper measure of damages in case of partial loss is the actual value of the total loss, measured by the fair market value of the trailer immediately before the loss and its value immediately after the loss. Appellant also contends that it should not pay the cost of repairs to the trailer when it has suffered only appearance damage.

In the case of Rossier v. Union Auto Ins. Co., 134 Or. 211, 213, 214, 291 P. 498, 500, under a policy limiting the insurance company's liability "to the actual cost of replacement of the property damaged or destroyed," the court said:

" 'Replacement' as thus used means, in our opinion, the restoration of the property to its condition prior to the injury. Such restoration may or may not be accomplished by repair or replacement of broken or damaged parts. It cannot be said that there has been a complete restoration of the property unless it can be said that there has been no diminution of value after repair of the car. Courts have differed in their construction of similar limitation clauses and will probably continue to do so, so long as policies are couched in language tending toward uncertainty and confusion."

In the case of Prickett v. Hawkeye-Security Ins. Co. (10th Cir. 1960), 282 F.2d 294, 301, the court ruled as follows:

"* * * It is the settled law in Kansas that a policy of insurance which is free from ambiguity must be construed ac-

cording to its terms taken at their plain, ordinary, and accepted sense. But if the terms of the policy are ambiguous, obscure, or open to different constructions, the construction most favorable to the insured or other beneficiary must prevail. That general rule applies with particular force to an ambiguous or doubtful provision in a policy or in an endorsement attached thereto which attempts to exclude from coverage liability in certain circumstances. Spence v. New York Life Insurance Co., 154 Kan. 379, 118 P.2d 514, 137 A.L.R. 753; Braly v. Commercial Casualty Insurance Co., 170 Kan. 531, 227 P.2d 571. And as a concomitant to that rule, it is held in Kansas that if an insurer intends to restrict its coverage, it should use a language clearly stating its purpose. [Citing cases.] But like others, the purpose of these rules is to aid the court in arriving at the intent of the parties to the policy.''

In the instant case, the witness Duane Dabner, testified that he was a partner in the North Star Body and Trailer Company at Billings, Montana, and on September 10, 1958, he made an estimate of parts and labor to repair the mobile home of the respondent. The estimate was $572 for labor, and $427.67 for parts and material, or a total of $999.67. This exhibit was offered and properly received in evidence.

Appellant cites specification of error 3 as error in the rejection of the testimony of Hubert H. Cummings, Jr. who stated that he was an insurance adjuster for the appellant. He testified as follows:

"Q. In connection with that loss, have you examined the file of your company in connection with that loss?
A. Yes.

''Q. Did you as an adjuster, or did anybody from the Foremost produce any estimate of repairs to the vehicle resulting from the hail damage of June 7, 1958? A. No.

"Q. You received no other estimates of repair then?
A. No.

"Q. The only one in existence is the one that was presented here today? A. As far as I know.

"Q. And at that time were there other repair outfits in Billings in the business of repairing trailers? A. No. As pointed out, Dick Muller had a shop on the west side, and Harmon's Body Shop has on occasion repaired trailers, but principally for a fully equipped trailer shop, the North Star would be the one."

Mr. Cummings further testified in response to questions put to him by appellant's counsel.

"Q. And did you receive instructions in connection with the matter of repair estimates? A. Yes, I did.

"Q. And what were those instructions? A. We were not to obtain repair estimates.

"Q. And did you so instruct the adjusters working for you? A. I did.

"Q. Now did you first go out and see this trailer in connection with this adjustment or did you send one of the others out? A. Well, I had E. R. McDonald go out on this particular loss first. The only reason I hesitate is two and one-half years is a long time and I don't honestly remember. * * *

"Q. Mr. Cummings, what was your estimate of the value, the loss and value to this trailer caused by this hail storm? A. $350.

"MR. SHEEHY: Move to strike the answer.

"THE COURT: Strike it out.

"MR. SHEEHY: I want to know what he valued the trailer before and after and we will make the computation. A. Yes.

"THE COURT: Limit yourself to that.

"MR. CARSTENSEN: I think he can ask what questions he wants.

"THE COURT: Well that's true, and yet under your theory of the case you were saying that the loss is a dif-

ference between the value immediately before the hail storm and the value immediately afterward, isn't that your position?

"MR. CARSTENSEN: Yes, and that's the question I am asking.

"THE COURT: Well of course, that's what the question should be limited to, I think.

"MR. CARSTENSEN: I take the position that if that is the loss, the actual figures don't make any difference because it is the difference in value before and afterwards that we are claiming as the proper measure of damages and that is the question that I have asked him.

"THE COURT: You may read the last question to the witness.

"(Last question read to the witness at this time.)

"THE COURT: I think we are limited to his statement as to the value before the hail storm and the value after the hail storm. I will sustain the objection.

"Q. Mr. Cummings, do you now know the value you placed on that trailer without any hail damage? A. *No, I would have to guess.* (Emphasis supplied.)

"Q. Do you know the value you placed on that trailer after the hail storm by reason of the hail damage? A. It would have been $350 less than my first guess.

"Q. In other words you do not now know those two figures? A. No, there would be absolutely no reason for me to remember that, there is too many varying factors in there.

"Q. But you do remember your estimate as to the decrease in value caused by this hail storm? A. That's right."

From the above quoted testimony it can be concluded that the insurance adjuster's testimony was based purely on speculation, that there was no foundation of any kind laid on which he based his estimate, and the trial court properly

refused to receive it. Thereafter, on proper motion the testimony of Mr. Cummings was struck from the record.

Appellant called as a witness E. H. Danhaus, who was engaged in trailer sales in Billings, and who testified as to what he would discount for hail damage based upon a trade-in and not upon the resale of the property. Such testimony is as follows:

"Q. Now in 1958 did you examine a * * * trailer owned by a Jim Eby at the request of the Foremost Insurance Company through their adjuster? A. I looked at a trailer * * * and the man asked me what I would discount it if I was taking it in on a trade or how much damage I would figure, is that the question that you want?

"Q. Yes. * * * And did you arrive at an opinion? A. Yes.

"Q. And what was that opinion?"

Objection by Mr. Sheehy, overruled by the Court.

"Last question read by the reporter."

".A. May I answer, the opinion what I said the trailer was damaged, is that it?

"Q. Yes. A. The man asked me what I would discount the trailer if I was taking it in on a trade-in and I says between four and four-fifty.

"Q. And why that discount? A. By reason of hail damage, hail damage only, I had not seen the interior or nothing, just the exterior, the outside.

"Q. Did you make a statement as to the value of the trailer? A. *Never.* (Emphasis supplied.) * * *

"Q. And this was its, this was its trade-in value as far as you were concerned, or discounted for trade-in purposes? A. I never put a trade-in value on the trailer at all, I used, just the damage I appraised.

"Q. Looked at the damage? A. Yes, it was whether it was on a small trailer or a big one, I figured possibly $400, $450 worth of damage on it.

"Q. What he was asking you is what you would discount it if it was being traded in? A. $450.

"Q. Did he put it that way, the adjuster, when he asked you? A. Yes.

"Q. What you would discount the damage if the trailer would be traded in? A. Yes.

"Q. He didn't mention then the market value beforehand or the market value afterward? A. No.

"Q. None of those things entered into your discussion with the adjuster? A. No.

"Q. And haven't since? A. No.

"Q. And you haven't actually made an estimate then as to the actual market value of that trailer before the hail storm or after the hail storm? A. Never have"

Regarding this question of so-called expert testimony in the case of Cummings v. Reins Copper Co., 40 Mont. 599, 107 P. 904, this court quoted with approval from Nutt v. Southern Pac. Ry., 25 Or. 291, 35 P. 653, as follows: " 'The necessity for opinion evidence only exists where the facts in controversy are incapable of being detailed and described so as to give the jury intelligible understanding concerning them; but when the facts are such as can be detailed or described, and the jury are able to understand and draw a correct conclusion from them without such opinion evidence, the necessity for it does not exist.' " See also Copenhaver v. Northern Pac. Ry., 42 Mont. 453, 113 P. 467, and In re Miller's Estate, 71 Mont. 330, 229 P. 851.

At the conclusion of the testimony on cross-examination of the witness Danhaus counsel for respondent moved to strike the witness's testimony on the ground that it was incompetent, irrelevant, and immaterial, not a proper measure of damages, and that the witness's statement was not a statement based on market values but upon a trade-in or a resale value of the trailer. The court properly sustained this objection and struck the testimony.

■ The district court having properly struck from the record the adjuster's testimony, which was a guess of $350, and the testimony of Mr. Danhaus, based upon a trade-in, was then confronted with a record disclosing only the damages testified to by the witness Dabner of the North Star Body and Trailer Repair, and who summarized his testimony by exhibit 2 which established that the damages were in the sum of $999.67. This also disposes of specification of error number 4 of appellant.

The court in its findings of fact and conclusions of law followed the provisions of section 17-301 R.C.M.1947, which provides:

*"Measure of damages for breach of contract.* For the breach of an obligation arising from contract, the measure of damages, except where otherwise expressly provided by this code, is the amount which will compensate the party aggrieved for all the detriment proximately caused thereby, or which, in the ordinary course of things, would be likely to result therefrom."

The appellant here failed to prove the measure of damages according to its theory of the case. Having decided there is no merit in appellant's specifications of error, and finding no error by the trial court in its rulings and decision, the judgment is affirmed.

It is so ordered.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES ADAIR, CASTLES and JOHN C. HARRISON, concur.