PALMER O. JOHNSON, Plaintiff and Respondent, v.
EQUITABLE FIRE AND MARINE INSURANCE COM-
PANY, a Corporation, Defendant and Appellant.

No. 10461

Submitted April 16, 1963. Decided May 23, 1963.

381 P.2d 778.

Rockwood & Sykes, Kalispell, Forrest C. Rockwood (argued), Kalispell, for appellant.

Walchli, Korn, Warden & Walterskirchen, Kalispell, William C. Walterskirchen (argued), Kalispell, for respondent.

MR. JUSTICE JOHN C. HARRISON delivered the Opinion of the Court.

This is an appeal by the defendant, Equitable Fire & Marine Insurance Company, a corporation, from a summary judgment for the plaintiff in the district court of the eleventh judicial district. There is no issue of fact, and but one issue of law involved in this appeal.

Plaintiff is a used car and truck dealer in Kalispell, Montana. Defendant is an insurance carrier, which had an insurance policy covering plaintiff's trucks, in full force and effect at the times in question.

On May 14, 1959, plaintiff purchased four trucks at wholesale in Seattle, Washington. Among the trucks were a 1951 White truck, and a 1940 Mack EQ4D truck. In addition to the purchase price, plaintiff had some minor repair work done on the White truck, and installed tires on both. In all he expended $724.92 for additions.

On May 22, 1959, while enroute from Seattle, and while within forty-five miles of that city, both the White and the Mack trucks were involved in a serious accident which virtually destroyed both. The total salvage value was $1,561.

By stipulation of the parties, a deposition of the defendant was used to establish the retail market value of the trucks in the Seattle area. Those values were $3,500 for the White truck, and $3,250 for the Mack truck. The plaintiff admittedly purchased both for less than that figure. During pretrial, the defendant attempted to introduce the wholesale value in Seattle, but was not permitted to do so.

The policy of insurance contained the usual clause setting the liability as follows:

"* * * 3. Limit of Liability; Settlement Options; No Abandonment: The limit of the company's liability for loss shall not exceed either (1) the actual cash value of the automobile, or if the loss is of a part thereof the actual cash value of such part, at time of loss, or (2) what it would then cost to repair or replace the automobile or such part thereof with other of like kind and quality, with deduction for depreciation, or (3) the applicable limit of liability stated in the declaration."

The policy further provided:

"6. Exclusions. This policy does not apply: (a) to the prospective profit of the insured or overhead charges of any nature: * * *."

Summary judgment was given for the plaintiff on the basis of retail market value in Seattle, plus the cost of the additions, less salvage and the deductible of $250 per vehicle for a total of $5,799.92 plus interest and costs.

Defendant appeals on the ground that the court erred in settling on the basis of retail market value rather than wholesale market value.

Both parties agree that the law is clear that "actual cash value" means "market value". Defendant, however, contends that market value is a term which shifts meaning depending upon to whom it is applied. Thus, here where the insured is a dealer, market value means wholesale market. Defendant relies upon exclusion 6 cited above which excludes "prospective profit" to support his position.

Unfortunately for the defendant, however, the phrase "prospective profit" is susceptible of some interpretation. In the instant case the court can conceive of two possible meanings. It is admitted that the retail market value would have been greater in Kalispell than in Seattle. It was this prospective profit which the court below felt was excluded. Defendant contends that it refers to the prospective profit over the dealer cost.

The plaintiff argues that if by exclusion 6 above-cited, the in-

surer wished to limit recovery of dealers to wholesale market value, then they should have said so in plain unambiguous terms. With this we agree.

While courts are construing insurance contracts, they "are not authorized to seize upon certain and definite covenants expressed in plain English with violent hands, and distort them so as to include a risk clearly excluded by the insurance contract." (Mitchell v. German Commercial Accident Co., 179 Mo. App. 1, 161 S.W. 362, 363.)

Still, where an ambiguity exists, the applicable rule appears in Eby v. Foremost Insurance Co., 141 Mont. 62, 374 P.2d 857, where this court quoting from Prickett v. Hawkeye-Security Ins. Co. (10th Cir. 1960), 282 F.2d 294, 301, said:

" ' * * * [i]t is the settled law in Kansas that a policy of insurance which is free from ambiguity must be construed according to its terms taken at their plain, ordinary, and accepted sense. But if the terms of the policy are ambiguous, obscure, or open to different constructions, the construction most favorable to the insured or other beneficiary must prevail. *That general rule applies with particular force to an ambiguous or doubtful provision in a policy or in an endorsement attached thereto which attempts to exclude from coverage liability in certain circumstances.* [Citing cases.] And as a concomitant to that rule, it is held in Kansas that if an insurer intends to restrict its coverage, it should use a language clearly stating its purpose. [Citing cases.]' " Emphasis supplied

The rule adopted in the Eby case, supra, is clearly applicable here, where the defendant seeks to put a strained interpretation upon a term which is well understood, i. e., actual cash value.

The term which seeks to limit the recovery is in itself ambiguous, and we agree with the court below that it was proper to construe the term in favor of the plaintiff insured.

Defendant is unable to cite a single case involving an auto-

mobile insurer where "actual cash value" is held to have a different meaning for dealers. Finding no reason to disturb the decision of the district court, the decision is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES CASTLES, ADAIR, and DOYLE, concur.