48 F.3d 1228
NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
 MOUNTAIN WEST FARM BUREAU MUTUAL INSURANCE COMPANY,
Plaintiff-Appellant,
v.
Kenneth MITCHELL, Defendant-Appellee.
 Nos. 94-35049, 94-35080.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Jan. 12, 1995.
Decided Feb. 27, 1995.
 
 1
 Before: WRIGHT and BRUNETTI, Circuit Judges, and GONZALEZ,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 On cross-motions for summary judgment, the district court granted summary judgment for Kenneth Mitchell ("Mitchell"), finding coverage under the automobile policy but not the homeowner's policy. Mountain West Farm Bureau Mutual Insurance Company ("Farm Bureau") and Mitchell appeal the district court's order. We have jurisdiction under 28 U.S.C. Sec. 1291 and affirm.
 
 I. STATEMENT OF FACTS
 
 4
 Farm Bureau brought this insurance coverage action against its insured, Mitchell. On May 14, 1992, Mitchell was involved in a welding accident which caused a fire and resulted in damage to the Bartow Welding building in Roundup, Montana. Gerald Bartow ("Bartow") owned the building, and he has filed a negligence action against Mitchell in state court.
 
 A. Mitchell's Involvement with Bartow
 
 5
 Mitchell, who is a welder by trade, planned to open a welding business in Roundup. Bartow owned and operated Bartow Welding, which housed several businesses including a welding and machine shop; however, Bartow had ceased operating the welding and machine service business in 1990 or 1991 as a result of health problems. Bartow Welding continued to sell and lease oxygen, welding equipment, welding rods, and steel. Because of Bartow's health, his daughter Debbie Hannum operated the business with the assistance of Bartow's wife Tootsie.
 
 
 6
 On February 17, 1992, Bartow and Mitchell first met and began discussing the possibility of Mitchell leasing or purchasing the welding business from Bartow. Discussions continued until the fire; however, Bartow and Mitchell had not reached a final agreement nor had any proposal been put in writing.
 
 
 7
 While Bartow and Mitchell were negotiating, Bartow allowed Mitchell access to the shop to look it over and check out the equipment. In order to reach agreement on terms and price, Mitchell needed to inventory the items and machines in the shop. On occasion, Mitchell's inspection included cleaning, or to a limited extent running, the equipment.
 
 
 8
 Although Bartow gave Mitchell a key to the back door, Bartow did not give Mitchell unlimited or exclusive access to the building.[1] Bartow's daughter was present at the shop almost every day, and she supervised the shop operations. Only Bartow, his daughter, and his wife had access to the office, which occupied approximately one-quarter of the building. Furthermore, Bartow understood that if Mitchell wanted to use the building for purposes other than inventory or inspection of the welding equipment, Mitchell would have had to obtain his or his daughter's permission.
 
 
 9
 During the negotiations, Bartow agreed to allow Mitchell to use the welding shop and its equipment to perform three welding jobs. The first two were business-related and the third was a personal favor. First, Bartow Welding accepted a contract to do some repair work at the local jail, and Bartow subcontracted the work to Mitchell. Second, as a good will business gesture that might benefit both Bartow Welding and Mitchell, Bartow agreed to allow Mitchell to do some free repair work for a local museum. At the time of the fire, Mitchell was not performing any work related to either of these jobs. Third, Mitchell sought and obtained permission in advance from Bartow and his daughter to bring his pickup truck to Bartow Welding to install a hitch.
 
 
 10
 On the day of the fire, Mitchell brought his truck to Bartow Welding. Mitchell pulled his truck into the shop and used the shop's band saw, arc welder, and welding rods to install the hitch. In the process of welding the truck's frame, the truck caught on fire. When Mitchell attempted to use the fire extinguisher, the fire spread. The fire caused extensive damage to Mitchell's truck and to the Bartow Welding building and its contents.
 
 B. Insurance Policies
 
 11
 Farm Bureau had issued Mitchell an automobile and a homeowner's insurance policy, both of which were in effect at the time of the fire.
 
 
 12
 The relevant portion of Mitchell's automobile coverage affords liability protection to an insured for property damage "arising out of an occurrence involving an insured vehicle." However, this provision excludes coverage for "damage to property rented to, used by, or in the care, custody or control of an insured."
 
 
 13
 In his homeowner's policy, Mitchell purchased coverage for both his dwelling and general liability. Mitchell only asserts coverage under the section which contains coverage for liability. The relevant section provides that Farm Bureau will pay up to the policy limit of liability if a claim is made against the insured for "property damage for an occurrence to which the coverage applies."
 
 
 14
 Mitchell's homeowner's coverage is subject to two pertinent exclusions. The first excludes coverage for property damage to
 
 
 15
 [p]roperty owned by, used by, rented to, or in the care, custody, or control of any insured ... or as to which any insured ... exercise[s] physical control for any purpose ...
 
 
 16
 The second excludes coverage for property damage "arising from the maintenance, operation, use, loading or unloading of the [insured's motor vehicle]."
 
 
 17
 As a result of the fire, Bartow sued Mitchell for damages. Mitchell demanded that Farm Bureau defend and indemnify him under his homeowner's or automobile policy. Farm Bureau denied coverage.
 
 C. District Court's Holding
 
 18
 On cross-motions for summary judgment, the district court denied Farm Bureau's motion and granted summary judgment for Mitchell. The district court found the language of the exclusion in the automobile policy ambiguous as applied to the facts of the case. Construing the ambiguity in favor of the insured, the district court held that only the actual items[2] being used by Mitchell were excluded from coverage. Farm Bureau appeals this holding.
 
 
 19
 The district court also stated that Mitchell had conceded that coverage was excluded under the homeowner's policy. Because we affirm the district court's holding with respect to the automobile policy, we do not reach the issue of coverage under the homeowner's policy.
 
 II. ANALYSIS
 
 20
 We review the district court's grant of summary judgment de novo. Nevada VTN v. General Ins. Co. of Am., 834 F.2d 770, 773 (9th Cir.1987). Thus, we must determine whether, looking at the evidence in the light most favorable to the nonmoving party, there are any genuine issues of material fact and whether the district court applied the substantive law correctly. Id. Because federal jurisdiction is based on the parties' diversity of citizenship, we apply the law of the forum state, Montana. Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 496, 61 S.Ct. 1020, 1021, 85 L.Ed.2d 1477 (1941). See also United States Fidelity & Guaranty Co. v. Newman, 656 F.2d 457 (9th Cir.1981) (following Montana law).
 
 
 21
 The general law of contract interpretation governs the interpretation of insurance policies. Newman, 656 F.2d at 459. We must construe the insurance policy as a whole, viewing all its terms and conditions. Mont.Code Ann. Sec. 33-15-316. The language of the policy governs its interpretation, if it is clear and explicit. Wellcome v. Home Ins. Co., 849 P.2d 190, 192 (Mont.1993). However, any ambiguities must be strictly construed against the insurer. Id. See Shell v. Peters, 410 P.2d 152, 155 (1966); Mont.Code Ann. Sec. 28-3-401 (1993). Under Montana law, contract interpretation and whether an ambiguity exists are questions of law to be determined by the court. Schell, 410 P.2d at 152. See also Newman, 656 F.2d at 459 n. 2 (following Montana law).
 
 
 22
 When interpreting an insurance policy, the common rather than the technical definition and usage of the policy's terms should be used. Bauer Ranch v. Mountain West Farm Bureau Mutual Ins., 695 P.2d 1307, 1309 (Mont.1985). Thus, we look not at what the insurer meant by the words of the policy but what a reasonable person in the position of the insured would understand the words to mean. St. Paul Fire & Marine Ins. Co. v. Thompson, 433 P.2d 795, 798 (Mont.1967).
 
 
 23
 Under the language of either policy, Bartow's claim against Mitchell is for property damage caused by an occurrence which gives rise to coverage. But for the exclusions of each policy, the claim would be covered.
 
 
 24
 The district court found coverage under the automobile policy which excludes coverage for "damage to property rented to, used by, or in the care, custody or control of an insured." The district court found the language "used by" or in the "care, custody or control" of the insured ambiguous as applied to the facts of the case and thus construed it against the insurer to find coverage.
 
 
 25
 The district court found that at all times the shop was under the care, custody or control of Bartow, by or through his daughter or wife, and that Mitchell was given only "a limited right of access to the property for the purpose of pursuing a future lease interest and was thus not 'using' the shop and all of the equipment." Farm Bureau contends that there is a triable issue of fact as to Mitchell's right of access to and use of the shop; however, the record contains no evidence to support Farm Bureau's contentions except its statement of uncontroverted facts which cites to depositions which were not made a part of the record. On the basis of the record before us, we find that there is no triable issue of fact as to the following: (1) Mitchell had a key and therefore access to the Bartow Welding building, but not its office; (2) Bartow and his daughter gave Mitchell express permission to be in the Bartow Welding building to mount a hitch on his truck; and (3) on the day of the fire, Mitchell was in the building for the specific purpose of mounting the hitch.
 
 
 26
 The district court correctly applied the ambiguity analysis to the terms of the exclusion. Ambiguity exists in the policy if "different persons looking at the writing in light of its purpose cannot agree upon its meaning." Farm Mutual Auto. Ins. Co. v. Queen, 685 P.2d 935, 937 (Mont.1984). The ambiguity of the "use" and "care, custody or control" exclusion arises from the fact that reasonable persons could conclude (1) that because Mitchell had a key which gave him access to three-quarters of the building, when he entered the building on the day of the fire he was using or had care and control of the building; or alternatively (2) that because Mitchell was present in the building with the permission of its owner and its supervisor for the purpose of mounting the hitch, he only used or had care and control over that equipment reasonably necessary to complete the task.
 
 
 27
 Because reasonable persons could disagree as to the meaning of the exclusion, the district court properly adopted the construction most favorable to the insured. See Johnson v. Equitable Fire & Marine Ins. Co., 381 P.2d 778, 779 (Mont.1963). This rule applies with "particular force" to an ambiguous provision that attempts to exclude liability from coverage. Id. (quoting Eby v. Foremost Ins. Co., 374 P.2d 857 (Mont.1962)). The district court's finding that coverage was afforded for all property damaged except the three pieces of equipment actually being used by Mitchell at the time of the fire reflects a correct application of the substantive law.
 
 
 28
 AFFIRMED.
 
 
 
 *
 The Honorable Irma E. Gonzalez, United States District Judge for the Southern District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3
 
 
 [1]
 Bartow had given a key to John Tucker, a machinist with whom Bartow was also negotiating, so that he could inspect the machine equipment in the shop
 
 
 [2]
 These were the arc welder, welding rods, and band saw