No. 00-134

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 378

CHRIS CHRISTENSEN and ANGIE CHRISTENSEN,

individually and as guardians and conservators for

LiAshley CHRISTENSEN and her estate,

Petitioners and Appellants,

v.

MOUNTAIN WEST FARM BUREAU

MUTUAL INSURANCE COMPANY,

Respondent and Respondent.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Robert T. Bell and Richard A. Reep, Reep, Spoon & Gordon, Missoula,

Montana (Ashley Christensen)

For Respondent:

Lon J. Dale and G. Patrick Hagstad, Milodragovich, Dale, Steinbrenner &

Binney, P.C., Missoula, Montana

Submitted on Briefs: August 24, 2000
Decided: December 28, 2000

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the opinion of the Court.

¶1 The Petitioners, Chris Christensen and Angie Christensen, petitioned the District Court for the Fourth Judicial District in Missoula County for declaratory judgment pursuant to § 27-8-101, et seq., on behalf of themselves and their daughter LiAshley Christensen. They sought a determination that liability insurance coverage was provided to Addi Brewer pursuant to a policy issued by the Respondent, Mountain West Farm Bureau Mutual Insurance Company. Both parties moved for summary judgment. The District Court denied Christensen's motion and granted Mountain West's motion. The Christensens appeal from the District Court's order. We reverse the order and judgment of the District Court.

¶2 We conclude that the following issues are dispositive of Christensens' appeal:

¶3 1. Did the District Court err when it concluded that the vehicle in which Ashley L. Christensen was injured was not an insured vehicle pursuant to the "after acquired vehicle" provision in the policy issued by Mountain West to Rosemary Fitzpatrick?

¶4 2. If the vehicle in which Ashley Christensen was injured is insured by two policies issued by Mountain West, can the policies be "stacked" to provide the maximum coverage available under each policy?

## DISCUSSION

¶5 On February 28, 1998, Addi Brewer, was operating a 1992 Ford Escort owned by her and her grandmother, Rosemary Fitzpatrick, when she lost control of the vehicle, left the roadway, and collided with a tree. At the time of the collision, seven-year-old Ashley Christensen was a passenger sitting in the rear seat of the vehicle next to that door which impacted the tree. Her petition for declaratory relief alleges that as a result of the collision, she suffered severe brain injury, a ruptured spleen, a shattered jaw, and damage to her face which required 100 stitches to repair, and will result in permanent scarring. At the time of her parents' petition for declaratory relief, her medical expenses exceeded $51,000 and more expenses were expected in the future.

¶6 The vehicle that Addi Brewer was operating, had been purchased on December 4, 1997. Both Brewer and Fitzpatrick were listed as owners on the title to the vehicle.

¶7 Prior to her purchase of the Escort, Fitzpatrick had a liability insurance policy in effect with Mountain West which provided for liability coverage in the amount of $500,000 per occurrence and identified three other vehicles on the declarations page as insured vehicles. That policy provided in Coverage N, that Mountain West would pay damages up to the liability limit if an insured is legally liable for damages resulting from an occurrence involving an "insured vehicle." Insured, in that policy, included Rosemary Fitzpatrick as well as anyone using an insured vehicle with her permission. "Insured vehicle" was defined to include:

> 2. Under Coverages N . . . any licensed private passenger automobile . . . ownership of which is acquired by you during the policy period.
>
> . . . .
>
> The vehicles in 2 and 3 above are not insured vehicles unless you ask us to insure the newly acquired vehicle during the policy period or within thirty (30) days of its acquisition, whichever is shorter. You must pay any additional premium *required* to insure the newly acquired vehicle.

(Emphasis added.)

¶8 It is undisputed that the 1992 Ford Escort was purchased by Fitzpatrick during the time that this policy (Policy No. 1) was in effect. Furthermore, it is undisputed that Fitzpatrick notified Mountain West that she had purchased the vehicle and requested that it be

insured. However, she requested that it be insured by a separate policy (Policy No. 2) in which the Escort alone was listed on the declarations page and which provided total liability coverage of $100,000 per occurrence. Both Fitzpatrick and Brewer were named insureds on Policy No. 2. Both policies were in effect on February 28, 1998-the date of Brewer's accident in which Christensen was injured.

¶9 On May 20, 1998, Mountain West filed an interpleader action in the District Court for the Fourth Judicial District in which it named Brewer, Ashley Christensen, two other vehicle passengers, and numerous healthcare providers as Defendants. It set forth the circumstances of Brewer's accident, the fact that $100,000 of coverage was available, and tendered the $100,000 policy limits pursuant to Policy No. 2 so that the court could pay healthcare providers and the various claimants in proportion to their damages. As a result of the interpleader action, the healthcare providers were paid, claims of the other two passengers were settled, and whatever balance remained from the coverage provided by Policy No. 2 was distributed to Christensens.

¶10 Christensens then brought this declaratory action and asked the District Court to conclude that additional coverage was available pursuant to the "after acquired vehicle provision" in Mountain West Policy No. 1. Christensens contended that the Escort was insured pursuant to that policy as an "after acquired vehicle" and that Brewer was insured as a permissive user of a vehicle owned by the named insured-Fitzpatrick. Christensens also alleged other bases for coverage which are irrelevant to our resolution of this appeal. Finally, they claimed that coverage from both policies should be "stacked" to provide a total amount of $600,000 of coverage.

¶11 Mountain West admitted that Fitzpatrick owned the Escort and that Brewer drove it with her permission, but denied that the Escort was insured pursuant to the language in Policy No. 1. It also claimed that pursuant to § 33-23-203, MCA, coverage provided by more than one policy from the same company cannot be "stacked."

¶12 Both parties moved for summary judgment. Christensens relied on the plain language of Policy No. 1 and Montana case law honoring an insured's reasonable expectations and narrowly construing limitations on insurance coverage. They contended that "after acquired" vehicle coverage was provided pursuant to Policy No. 1 because Mountain West had been informed of its purchase and an additional premium had been paid for coverage. (Although the record is not clear, presumably Christensens refer to the premium paid for coverage pursuant to Policy No. 2). They contended that Montana's antistacking statute

was inapplicable because the policy included its own antistacking clause and that clause did not preclude stacking where coverage is provided by more than one policy.

¶13 Mountain West opposed Christensens' motion for summary judgment, based on its contention that as a matter of law "after acquired vehicle coverage" is not intended by the parties when a separate policy of insurance is purchased to insure a vehicle acquired during the first policy period. Mountain West supported its argument with authorities from other jurisdictions. Christensens provided authorities to the contrary. The District Court found Mountain West's authorities more persuasive. It, therefore, denied Christensens' motion for summary judgment and granted summary judgment to Mountain West. The District Court, in its decision, did not discuss whether the Ford Escort would otherwise have satisfied the definition of an "after acquired vehicle" in Policy No. 1.

## STANDARD OF REVIEW

¶14 This is an appeal from the District Court's order granting summary judgment. Summary judgment is proper when no genuine issues of material fact exist and the moving party is entitled to judgment as a matter of law. Rule 56(c), M.R.Civ.P. Furthermore, the District Court's order was based on its interpretation of an automobile insurance policy which presents a question of law. *Leibrand v. National Farmers Union Property & Cas. Co.* (1995), 272 Mont. 1, 6, 898 P.2d 1220, 1223. We therefore review a district court's conclusion of law as well as orders granting summary judgment to determine whether they are correctly decided. *State v. Sullivan* (1994), 266 Mont. 313, 318, 880 P.2d 829, 832.

## ISSUE 1

¶15 Did the District Court err when it concluded that the vehicle in which Ashley L. Christensen was injured was not an insured vehicle pursuant to the "after acquired vehicle" provision in the policy issued by Mountain West to Rosemary Fitzpatrick?

¶16 Mountain West contends that "after acquired vehicle" coverage is not intended to insure a vehicle acquired during the policy period for which a separate policy of insurance is purchased. It relies on and the District Court found persuasive, *Bramlett v. State Farm Mutual Automobile Insurance Company* (1970), 205 Kan. 128, 468 P.2d 157.

¶17 In *Bramlett* the plaintiff received medical payment coverage pursuant to a policy that insured a vehicle in which she was riding while she was injured and then sought additional

payment pursuant to a previous policy with the same company in which she was named as an insured and which provided "after acquired vehicle" coverage. The insurer in that case denied coverage based on its contention that the purpose of the "after acquired vehicle coverage" was to provide the insured with 30-days' interim protection until insurance coverage on a new car is acquired, but that once coverage is acquired, the automatic coverage provision is no longer applicable.

¶18 The Kansas court noted that other courts were not uniform in their resolution of this issue, but found the reasoning more persuasive from those courts which construed the "intent" of the parties and denied coverage. The Kansas court stated:

> We are more impressed with the reasoning of the Illinois court in construing the "newly acquired automobile clause." The intention of the parties and the purpose sought to be accomplished as expressed by the wording of the policy was given effect to arrive at the decision.

*Bramlett, 468 P.2d at 160.*

¶19 The Kansas court then provided the following explanation for its decision to deny coverage pursuant to the "after acquired vehicle" clause:

> The purpose of the "automatic insurance clause" or "newly acquired automobile clause" in an automobile policy is to provide insurance coverage when an owned automobile is not described in a policy. When specific insurance is purchased and a separate policy is issued on the automobile, it becomes an automobile described in a new policy and it is no longer a "newly acquired automobile." At that time the terms and provisions of the "automatic insurance clause" or "newly acquired automobile clause" are no longer applicable to the automobile.

*Bramlett, 468 P.2d at 160.*

¶20 *Bramlett* was followed in the cases relied on by Mountain West: *Beck v. Aetna Cas. & Surety Co.* (1976), 38 Colo. App. 77, 553 P.2d 397; *Northern Assurance Co. of America v. Farm Bureau Mut. Ins. Co., Inc.* (1991), 249 Kan. 662, 822 P.2d 45. However, it is important to note that the "after acquired" vehicle provisions in the policies construed in *Bramlett* and *Beck* include language that is not found in the clause at issue in this case. In *Bramlett* the "newly acquired automobile" clause provided that:

If more than one policy issued by the company could be applied to such automobile, the named insured shall elect which policy shall apply . . . .

*Bramlett, 468 P.2d at 159.*

¶21 In *Beck*, the "after acquired" clause required for coverage that:

The named insured notifies the company during the policy period or within 30 days after the date of such acquisition of his election to make this and no other policy issued by this company applicable to such automobile . . . .

*Beck, 553 P.2d at 398.*

¶22 The "after acquired vehicle" clause found in Fitzpatrick Policy No. 1 did not require the insured to elect coverage if more than one policy was applicable.

¶23 Christensens rely on the reasoning of *Carey v. State Farm Mutual Insurance Company* (4th Cir. 1966), 367 F.2d 938, and a series of cases which have followed that decision. *See Gorling v. Allstate Ins. Co.* (1972), 125 Ga. App. 497, 188 S.E.2d 128; *Goodman v. Allstate Ins. Co.* (1987), 137 Misc. 2d 963, 523 N.Y.S.2d 391; *Key v. Allstate Ins. Co.* (11th Cir. 1996), 90 F.3d 1546.

¶24 In *Carey* the plaintiff was injured when struck by a vehicle insured by a standard liability insurance policy issued by State Farm. However, the operator of the vehicle was also insured by an earlier policy issued by State Farm. The question was whether the vehicle he was operating at the time of his collision with the plaintiff was insured pursuant to that policy as an "after acquired vehicle." State Farm took the position, as Mountain West does in this case, that when the insured purchased additional coverage for the vehicle which collided with the plaintiff, he elected to waive any "after acquired vehicle" coverage provided by the policy in question. However, the Fourth Circuit Court of Appeals disagreed. It held that:

The insurer is bound by the express terms of its contract of insurance. When those terms, taken in their ordinary sense, convey a clear and unambiguous meaning, a court cannot indulge in ferreting out hidden meanings or unexpressed intentions to relieve the insurer of liabilities assumed in the policy. When ambiguities arise, the intent of the parties is controlling; but if any doubt remained it would, under the

familiar rule, be resolved in favor of the insured since the insurer formulated the language in the policy.

*Carey, 367 F.2d at 941.*

¶25 However, the Fourth Circuit found no ambiguity in the policy it was asked to interpret. The Fourth Circuit gave the following rationale for its conclusion that coverage was provided by the "after acquired vehicle" provision similar to the one at issue in this case:

> However, we find no ambiguity. The defendant in clause (c)(2), expressly undertook to insure all after-acquired private passenger vehicles of the insured, provided that notice of the acquisition is given within 30 days. Virgil Foster gave the requisite notice when he requested the defendant to transfer the insurance on his old automobile-a Plymouth-to the Chevrolet. The defendant's position that this notice operated either as a waiver or counter-offer is untenable. Frequently, automobile owners are unaware of the extent of coverage provided by their liability policies. Policies are long, detailed, and printed in type so small as to discourage close reading by the ordinary policy holder to determine precisely the coverage provided. It would be unreasonable to ascribe to Virgil Foster an intention to waive any additional protection to which he was entitled or to reject it by applying for specific insurance on the Chevrolet. If the defendant intended to insure newly acquired automobiles only as long as no specific insurance was taken out to cover them, it could have stated this expressly. If, as defendant suggests, it is anomalous to have two policies covering the same automobile, specific language obviating this could have been included in the family policy. Indeed, the simple omission of the provision in question would have avoided all question. The provision means what it says.

*Carey, 367 F.2d at 941-42.*

¶26 When considering the premium adjustment provided in the policy for coverage of an "after acquired vehicle" the Fourth Circuit made the following observation:

> While no premium adjustment was made on the family policy, the sequence of events from the acquisition of the Chevrolet to the date of the accident took only several weeks. The defendant [State Farm] may well have contemplated a premium

adjustment in the future, but delay in billing for any additional premium that it might be entitled to claim would not relieve it from the obligation of its contract.

*Carey*, 367 F.2d at 942.

¶27 We conclude that the reasoning in *Carey* is more persuasive than the reasoning in *Bramlett* for two reasons. First, the "after acquired vehicle" clause interpreted in Carey was similar to the clause at issue in this case and did not include the additional provision requiring the insured to elect coverage which was included in the clause interpreted in *Bramlett*. Second, the *Carey* decision, which is based on the plain terms of the contract language rather than "unexpressed intentions" is more consistent with our own decisional law which requires that:

> While an insurer may limit its liability in this area, the limiting language must be clear and unambiguous. . . . It is the rule of construction in Montana that language of limitation or exclusion must be clear and unequivocal; otherwise, the policy will be strictly construed in favor of the insured. *Terry v. National Farmers Union Life Ins. Co.* (1960), 138 Mont. 333, 356 P.2d 975; *Atcheson v. Safeco Ins. Co.* (1974), 165 Mont. 239, 527 P.2d 549; *Fassio v. Montana Physicians Serv.* (1976), 170 Mont. 320, 553 P.2d 998; *Lindell v. Ruthford* (1979), 183 Mont. 135, 598 P.2d 616; *Northwestern Nat. Gas Co. v. Phalen* (1979), 182 Mont. 448, 597 P.2d 720.

*Truck Ins. Exch. v. Wolstad* (1984), 212 Mont. 418, 423, 687 P.2d 1022, 1024-25.

¶28 Therefore, we conclude that the District Court erred when it granted summary judgment to Mountain West based on its conclusion pursuant to *Bramlett v. State Farm* that the purchase of specific coverage through Policy No. 2 for the 1992 Ford Escort terminated coverage for the Escort as an "after acquired vehicle" pursuant to Policy No. 1.

¶29 The only remaining question is whether the terms of coverage as an "after acquired vehicle" were satisfied. Policy No. 1 requires that: (1) the vehicle be purchased during the policy period; (2) the insured ask that the company cover the vehicle within 30 days; and (3) that the insured pay "any additional *premium* required to insure the newly acquired vehicle."

¶30 It is undisputed that the first two conditions have been satisfied. Christensens contend that the third condition is satisfied by the premium paid for Policy No. 2. Mountain West contends that the third condition has not been satisfied. However, Mountain West has offered no evidence that any additional premium was "required" for Policy No. 1 by means of a statement submitted to Fitzpatrick. Under similar circumstances, the Georgia court in *Gorling* held that:

> Allstate received notice of the additional vehicle during the policy period, and while the automatic coverage may have entitled Allstate to a premium adjustment, as provided in the policy, the fact that Allstate did not adjust the premium, but instead through its agent accepted an application to cover the vehicle under the illustrator policy as a described vehicle, did not alter the contract already in existence providing for automatic coverage, in the absence of any expressed enforceable agreement in the Crusader policy terminating the automatic coverage or providing for an election, . . . such as that provided in the policies involved in the *Bramlett v. State Farm Mut. Auto Ins. Co.*, 205 Kansas 128, 468 P.2d 157 (1970).

*Gorling, 188 S.E.2d at 131, 132.*

¶31 In *Goodman*, the New York court held that if other conditions had been satisfied, it was sufficient that the insured paid all premiums requested of him. *Goodman*, 523 N.Y. Supp. 2d at 393.

¶32 In *Key*, the Eleventh Circuit Court of Appeals resolved the premium issue in the following manner:

> With respect to condition (4), Allstate argues that Key never paid any additional premium for insuring the Fiesta from January 19, 1991, the date of acquisition, until March 5, 1991, the date Allstate first requested and Key agreed to pay additional premium for insuring the Fiesta with Allstate. This argument misconstrues how newly acquired automobile coverage works. As long as the other conditions are met, coverage on newly acquired automobiles automatically attaches at the time of acquisition and extends for the earlier of 60 days or until the insured notifies Allstate of acquisition but refuses to pay any additional premium which is requested. Moreover, under Florida law, an insurer may cancel existing coverage for non-payment of premium only after giving the insured "notice sufficiently in advance of the due date to afford the insured a reasonable opportunity to make payment without

lapse or interruption of continuous coverage.

*Key, 90 F.3d at 1550-51 (citations omitted).*

¶33 Montana law, likewise, provides that an insurer may not cancel an insurance policy for failure to pay a premium until ten days after a notice of cancellation is delivered or mailed to the insured. Section 33-15-1103(2), MCA. There is no suggestion that a demand for additional premium was ever made by Mountain West on Fitzpatrick. Nor is there any suggestion that notice was ever given to Fitzpatrick of cancellation for failure to pay any additional premium for "after acquired vehicle" coverage. We agree with the reasoning in the Georgia, New York, and federal authorities. We conclude that they provide a reasonable application of the requirement in the Fitzpatrick policy that the insured pay whatever premium is "required." Fitzpatrick is not in a position to pay the "required" premium until she is notified in the form of a bill or statement of what additional premium is due.

¶34 Therefore, we conclude that if other conditions of "after acquired vehicle" coverage are met, coverage on newly acquired vehicles attaches at the time of acquisition and continues for the policy period unless the insured refuses to pay any additional premium which is requested. Based upon the undisputed facts of record in this case, we conclude that "after acquired vehicle" coverage was provided by Mountain West Policy No. 1 to Addi Brewer as an insured under that policy.

## ISSUE 2

¶35 If the vehicle in which Ashley Christensen was injured is insured by two policies issued by Mountain West, can the policies be "stacked" to provide the maximum coverage available under each policy?

¶36 Section 33-23-203, MCA, provides as follows:

(1) Unless a motor vehicle liability policy specifically provides otherwise, the limits of insurance coverage available under each part of the policy must be determined as follows, regardless of the number of motor vehicles insured under the policy, *the number of policies issued by the same company covering the insured*, or the number of separate premiums paid:

(a) The limits of insurance coverage is available for any one accident are the limits specified for each coverage available under the policy insuring the motor vehicle involved in the accident;

. . . .

(c) The limits of the coverages specified under one policy or under more than one policy issued by the same company may not be added together to determine the limits of insurance coverages available under the policy or policies for any one accident.

. . . .

(3) An insurer that charges a premium for a specified coverage shall clearly inform or notify the insured in writing of the limits of the coverage with respect to the premium charged and whether the coverage from one policy or motor vehicle may be added to the coverage of another policy or motor vehicle.

¶37 Section 33-23-203, MCA is commonly referred to as Montana's "anti-stacking" statute. It prohibits adding coverages provided by two different policies which cover the same vehicle. Christensens contend that the "anti-stacking" statute does not defeat "stacking" coverages in this case because of the language in paragraph (1) which states that: "Unless a motor vehicle liability policy specifically provides otherwise, . . . ." Christensens contend that Mountain West Policy No. 1 "provides otherwise" because its "anti-stacking" clause does not specifically prohibit stacking separate policies. They also contend that because separate premiums were charged for Policy No. 1 and Policy No. 2 Mountain West had an obligation pursuant to subparagraph (3) to notify the insureds if "stacking" coverage provided in the policies was disallowed.

¶38 The policies "anti-stacking" clause provides as follows:

10. Limits of liability.

a. Regardless of the number of covered insured vehicles, insureds, premiums paid, claims made or vehicles involved, the most we will pay for all damages resulting from any one occurrence is:

(1) The limit of insurance for liability coverage shown on the declarations . . . .

¶39 Christensens contend that paragraph (10) does not track the language of § 33-23-203 (1) because it does not prohibit "stacking" regardless of the "number of policies issued by the same company." We disagree. Section 33-23-203(1)(c), MCA, prohibits stacking regardless of the number of policies issued unless the policy at issue provides otherwise. We interpret "provides otherwise" to mean unless the policy specifically permits "stacking." The Mountain West policy does not permit "stacking" under the circumstances in this case and in fact, provides to the contrary. The third condition of the policy provides as follows:

> 3. Other Vehicle Insurance in the Company. If this policy and any other vehicle insurance policy issued to you by this company apply to the same occurrence, the maximum limit or liability under all of the policies will not exceed the highest applicable limit of liability under any one policy (except uninsured motorist coverage). This is the most we will pay regardless of the number of insureds, claims made, insured vehicles, or premiums.

¶40 We conclude that when paragraphs 3 and 10 of the "Conditions" of Mountain West Policy No. 1 are read together, the policy is completely consistent with the prohibition found at § 33-23-203, MCA, against stacking multiple policies which cover the same accident. Therefore, we conclude that the maximum amount of coverage available to satisfy the Christensens' claims against Addi Brewer is $500,000. Of that amount $100,000 has been satisfied-$400,000 of coverage remains available.

¶41 For these reasons, we reverse the order and judgment of the District Court and remand this matter to the District Court for further proceedings consistent with this opinion.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ JAMES C. NELSON\

/S/ WILLIAM E. HUNT, SR.

/S/ W. WILLIAM LEAPHART

Justice Karla M. Gray, dissenting.

¶42 I respectfully dissent from the Court's opinion on issue 1, which relates to whether the Ford Escort was an "after acquired vehicle" pursuant to the Fitzpatrick policy. I would conclude that the vehicle was not an "after acquired vehicle" and, on that basis, decline to address issue 2, which involves whether the two Mountain West policies can be stacked.

¶43 Briefly stated, my disagreement with the Court's decision stems from its total failure to recognize the purpose of "after acquired vehicle" provisions in automobile insurance policies. That purpose, which we previously have recognized, is to broaden the coverage available under an existing automobile insurance policy to provide protection at the earliest possible time needed by the insured. *See Federated Mut. Ins. Co. v. Anderson* (1996), 277 Mont. 134, 141, 920 P.2d 97, 102 (citation omitted).

¶44 Taking that purpose together with the plain language of the Fitzpatrick policy at issue here, it is clear that the Ford Escort is not an "after acquired vehicle" because coverage was not sought on the newly acquired vehicle under the Fitzpatrick policy. In other words, under any logical and common sense reading of the provision at issue, the Fort Escort is not an insured vehicle because Fitzpatrick did not ask Mountain West to insure it under her *existing* policy during the policy period or within 30 days of its acquisition. Nor did she pay any premium to insure it under that policy. How acquiring--and paying for--separate insurance for the Ford Escort under Policy No. 2 can result in coverage for the vehicle under Policy No. 1, with no premium having been paid for that coverage, defies imagination, not to mention legal principles.

¶45 I would affirm the District Court on issue 1 and decline to address issue 2. I dissent from the Court's failure to do so.

/S/ KARLA M. GRAY